Brian O'Mara (Cal. Bar No. 229737)
**DICELLO LEVITT LLP**
4747 Executive Dr., Suite 240
San Diego, CA 92121
Telephone: (619) 923-3939
briano@dicellolevitt.com

Daniel R. Schwartz (*pro hac vice* pending)
Rebecca Trickey (*pro hac vice* pending)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
dschwartz@dicellolevitt.com
rtrickey@dicellolevitt.com

David A. Straite (*pro hac vice* pending)
**DICELLO LEVITT LLP**
485 Lexington Ave., Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
dstraite@dicellolevitt.com

*Attorneys for Minchul Paul Chwe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS RAPAK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ADOBE INC.,<br><br>Defendant. | Case No. 5:25-cv-03032-NW<br><br>**MINCHUL PAUL CHWE'S MEMORANDUM IN RESPONSE TO MOTION TO CONSOLIDATE AND APPOINT CO-LEAD COUNSEL [DKT. 20]** |
| BIANCA JOHNSTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ADOBE INC.,<br><br>Defendant. | Case No. 5:25-cv-03052-NW |

## TABLE OF CONTENTS

I. Introduction ........................................................................................ 1
II. Background .......................................................................................... 1
III. Proposed Interim Co-Lead Counsel DiCello Levitt Have Already Performed Substantial Work Related To This Matter .................................................... 4
IV. A Three Firm Co-Leadership Structure Makes Practical Sense ..................... 6
V. DiCello Levitt Have the Requisite Knowledge and Experience..................... 9
VI. Ability to Work With Other Applicants And Opposing Counsel ................ 14
VII. Willingness to Devote Resources ............................................................ 15
VIII. Conclusion .......................................................................................... 15

## TABLE OF AUTHORITIES

*Gill, et al. v. Cesars Entertainment Inc.*, No. 2:23-cv-01447 (D. Nev.)............................... 8
*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.) 7
*In re Marriott International Inc. Customer Data Security Breach Litig.*, No. 8:19-md-02879 (D. Md.) ........................................................................................................ 7
*In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 14-CV-10318, 2015 WL 1216318 (N.D. Ill. Mar. 5, 2015)......................................................... 9
*in re PayPal Honey Browser Extension Litigation*, No. 5:24-cv-9470-BLF (ND. Cal.)....... 7
*In re: Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-MD-03126-BMM, 2024 WL 5403460 (D. Mont. Nov. 1, 2024) ........................................................................ 9
*Kolstedt v. TMX Finance Corp. Svcs. Inc.*, No. 3:23-cv-76 (S.D. Ga.) ................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Minchul Paul Chwe ("Chwe"), plaintiff in Case No. 5:25-CV-03911 in this District, writes in Response to the pending motion to (1) consolidate the above-captioned cases ("*Repak*" and "*Johnston*," and, together, the "Related Cases") presently before this Court and filed in the District, and (2) appoint Lowey Dannenberg, P.C. ("Lowey") and Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") as Interim Co-Lead Class Counsel for Plaintiffs ("Proposed Interim Co-Lead Counsel"), and Schubert Jonckheer & Kolbe LLP ("Schubert Firm") as Liaison Counsel.

Mr. Chwe respectfully submits that the class would be best served by the appointment of DiCello Levitt LLP ("DiCello Levitt") as co-lead counsel. DiCello Levitt is one of the nation's leading plaintiffs' firms, including in the area of privacy and technology, having been the only firm ever to have been recognized by Law360 as the Cybersecurity & Privacy Group of the Year three years in a row (2020-2022). DiCello Levitt's investigation into the conduct of defendant Adobe Inc. ("Adobe" or "Defendant") has already revealed multiple practices of Adobe that were not yet uncovered or explored in depth by the other counsel to file in this matter, demonstrating the depth of DiCello Levitt's investigation, and its commitment to the case and the class.

## II. Background

On April 2, 2025, Plaintiff Rapak filed an action against Adobe relating to the use of tracking technology to profile users. On April 3, 2025, Plaintiff Johnston filed a complaint alleging similar issues.

On April 17, 2025, the Court issued an order relating the cases, each a putative class action. On April 23, 2025, counsel in the *Rapak* and *Johnston* matters filed a motion to consolidate the *Rapak* and *Johnston* cases and appoint Milberg and Lowey interim co-lead counsel. No substantive action has occurred in the matter since.

On May 5, 2025, Mr. Chwe filed a class action against Adobe following an independent investigation by counsel. Mr. Chwe and his counsel were unaware of the other matters filed against Adobe until May 2, 2025, as they were themselves preparing to file.[1] Mr. Chwe's counsel on May 6 drafted an administrative motion to relate the *Chwe* case, and presented it to counsel for *Rapak*, Mr. Levis of Lowey Dannenberg. The administrative motion to relate cases was filed late at night on May 7, 2025.[2]

On May 6, 2025 Mr. Chwe's counsel Daniel Schwartz spoke with Mr. Klinger at Milberg, who expressed enthusiasm regarding a possible collaboration.[3] Since the Response date for the leadership motion [Dkt. 20] was May 7, 2025, Mr. Klinger suggested that the parties file a Notice to the Court explaining to the Court that (1) the *Chwe* matter was recently filed and (2) counsel were conferring regarding a possible amended proposed leadership structure, and would provide further filings regarding leadership shortly (likely within a week). Mr. Schwartz agreed that, in event there was not time to reach a consensus the next day, such a filing made good practical sense so the firms could continue discussing a possible consensus.[4]

On May 7, Mr. Chwe's counsel Mr. Schwartz spoke with Mr. Levis at Lowey Danenberg in the morning. Mr. Levis stated that he would not be willing to share an equal co-leadership position with Mr. Schwartz or his firm because the *Chwe* plaintiffs were "too late." Despite Mr. Klinger's – Mr. Levis's proposed co-lead's – suggestion that a delay could be beneficial to allow the attorneys time to speak further – and would be courteous – throughout

---

[1] Declaration of Daniel R. Schwartz In Support Of Minchul Paul Chwe's Response To Motion to Consolidate and Appoint Co-Lead Counsel ("Schwartz Decl.") ¶ 5

[2] Schwartz Decl. ¶ 7.

[3] *Id.* ¶ 7

[4] *Id.* ¶ 8

the day Mr. Levis reiterated his refusal to accede to any delay in the Response date for the Motion for Leadership.[5]

Mr. Schwartz explained to Mr. Levis that the class would best be served if each of Milberg, DiCello Levitt, and Lowey Danenberg shared an equal co-leadership position, since each firm had independently dedicated substantial resources investigating this matter, and since the case is of substantial enough size that a three-firm co-leadership structure makes good practical sense. Mr. Schwartz also asked Mr. Levis to reconsider his position, and discuss with his proposed co-lead counsel Mr. Klinger the productive work DiCello Levitt and Milberg had done together.[6]

Mr. Schwartz also explained that, in any event, the proposed Notice or other filing that would extend the due date for the Response would serve the purpose of avoiding needless administrative difficulty, since the *Chwe* matter was not yet administratively related. As explained in correspondence, attached as Exhibit A to the Declaration of Daniel R. Schwartz, Mr. Schwartz explained to Mr. Levis that the proposed Notice (or other motion to extend the due date of this Response) would "also serve the purpose of basic collegiality, as it would allow DiCello Levitt to get our ducks in a row for a potential leadership application, in event we do not all end up in agreement (which [agreement] remains my sincere hope)."[7]

Mr. Levis nevertheless refused, insisting that Mr. Schwartz's "insistence" on being a co-lead was the reason for Mr. Levis's refusal to seek from the Court a courtesy extension to allow each of Milberg, Lowey Danenberg, and DiCello Levitt to continue their discussion.[8] The refusal, in other words, was strategic: Mr. Levis explained that so long as Mr. Schwartz's stated position remained that a three-way co-leadership structure was best, Mr. Levis would

---

[5] *Id.* ¶ 9

[6] *Id.* ¶ 11

[7] *Id.* ¶ 12

[8] At approximately 8:40 PM ET, Mr. Levis for the first time stated "I would be fine giving you until Friday if needed." At this point, it was clearly too late to seek such an extension from the Court.

not agree to any extension for the Response. The time crunch/administrative difficulty of this filing became attempted leverage.[9]

Again, this refusal to seek even a one-week extension from the Court for the Response (or to file the proposed Notice), was against the **express** wishes of Mr. Levis's proposed co-lead counsel, Mr. Klinger from Milberg, who himself had the idea for such a filing, and who repeatedly represented to Mr. Schwartz that he agreed such an extension/notice made good practical sense to allow discussions to continue, and should be willingly offered in any event as a matter of basic courtesy.[10]

To be clear, at no point have Mr. Schwartz, Mr. Levis, and Mr. Klinger yet been able to be on a single phone call together.[11]

Mr. Levis waited until late at night on May 7, 2025 to file the administrative motion to relate Mr. Chwe's case. Since the cases have not yet been administratively related, Mr. Chwe has, concurrently with this Response, filed a motion to intervene into the Rapak matter.[12]

This Response followed.

## III. Proposed Interim Co-Lead Counsel DiCello Levitt Have Already Performed Substantial Work Related To This Matter

DiCello Levitt attorneys have been independently investigating this matter for the better part of a year. In addition to investigating potential legal claims and damages models necessary for the claim (including potential equitable relief), DiCello Levitt has worked with experts to uncover detailed evidence of Adobe's wrongdoing. Some of the investigative work is reflected in three separate exhibits attached to the *Chwe* Complaint, and which detail aspects of the investigation. For example, DiCello Levitt's investigation revealed the

---

[9] *Id.* ¶ 15

[10] *Id.* ¶ 16

[11] *Id.* ¶ 17

[12] *Id.* ¶ 18

following unique insights, none of which evidence was described in such detail in other complaints filed in this matter:

- **Web crawler data**: DiCello Levitt's investigation leveraged years of web-crawler data to uncover thousands of specific websites that are impacted by Adobe's tracking tools, including thousands of websites in the top 10,000 most visited websites on the internet. In other words, through DiCello Levitt's investigation, the class should be able to show that all or nearly all users of the internet are being tracked by Adobe due to the ubiquity of Adobe's tracking technology across thousands of heavily-tracked websites.
- **Cookie Placement**: DiCello Levitt's investigation was unique in uncovering that one of Adobe's most important tracking tools – the so-called Demdex cookie – actually attaches to a user's browser prior to the user's being given an opportunity to "opt out" of third party cookies, making so-called opt out banners useless. This information will help support the class's arguments regarding Adobe's violation of their privacy through the subversion of meaningful consent, which among other things may bear on the ultimate calculation of damages.
- **Cookie Synching**: DiCello Levitt's investigation also uncovered Adobe's work in "cookie synching" – i.e., Adobe's means of leveraging seemingly unrelated data points across the internet through partnerships with non-Adobe entities. The *Chwe* complaint revealed specific instances of synching and appended an exhibit describing many of the ad technology partners with whom Adobe syncs those cookies. In other words, the *Chwe* complaint provides unique insight into the shear breadth of Adobe's tracking and the depth of information it has on users and, by extension, whether the scope of Adobe's surveillance could ever realistically be understood by every day users of the internet.

- **Cookie Disguising**: The investigation also revealed how Adobe disguises its third-party cookies as first-party cookies through the use of its corporate clients' domains instead of its own, thus forcing Adobe cookies - which behave like third-party cookies - onto users' browsers, and sidestepping user attempts to reduce undesired tracking through refusing non-essential third-party cookies through cookie consent popups and/or cookie blocking software. The *Chwe* complaint consequently provided a detailed and robust explanation of the mechanics of Adobe's attempt to circumvent consumer choice.
- **Tracking Data**: Counsel's investigation also provides unique insight into the type of activity actually tracked by Adobe. Appended as Exhibit A to the Chwe complaint is a short report by an expert, Richard Smith, showing the nature of information collected by Adobe, including, e.g., video viewing habits.

In short, DiCello Levitt's investigation has been lengthy, extensive, and of unique and great benefit already to the class, a level of effort that previews its commitment to the putative class members.[13]

**IV. A Three Firm Co-Leadership Structure Makes Practical Sense**

Respectfully, the matter is of significant enough size and scope that a three firm leadership structure makes good practical sense. Adobe is a massive company, with a market capitalization of over $164.1 billion, and this lawsuit attacks a substantial portion of its business model: its advertising technology business. The case will certainly be characterized by a substantial amount of discovery, both in the form of document discovery relating to the nature of Adobe's ad tech practices (and the data it takes to support them), and substantial expert discovery, which will be necessary to explain Adobe's data flow, its complex means of subverting consumer expectations, and the damages these kinds of actions cause. As noted above, DiCello Levitt has already (and uniquely) uncovered that Adobe's tracking technology is on thousands of the ten thousand most trafficked websites on the internet.

[13] *See* Schwartz Decl. ¶¶ 2-4.

Adobe is a single defendant, but a massive one, and its wrongdoing as alleged impacts all or nearly all users of the internet.

Cases of this level of complexity and size are appropriately robustly staffed, even where there is a single defendant. For example, *In re Google RTB Consumer Privacy Litigation*, No. 21-cv-02155 (N.D. Cal.) was a case filed in 2021 in which Plaintiffs alleged that it was inappropriate for Google to utilize certain data in the "Real Time Bidding" marketplace, whereby advertisers place automatic bids based on identifying characteristics of users. The case, while distinct, bears some similarity to this one: like the cases filed against Adobe, Google RTB required the leveraging of complex analysis to show that purportedly "anonymous" internet users were in fact being positively identified (and their privacy violated) by the data about them which the defendant had collected and shared. The case was also characterized by extensive expert evidence, and required attorneys to gain deep understanding of a complex ad technology infrastructure. The Court accordingly appointed seven firms as part of a leadership group (including DiCello Levitt's David Straite on the Executive Committee, one of the members of the DiCello Levitt team here).

Many courts have unsurprisingly decided to appoint three co-leads in other large-scale privacy/highly technical litigations that, like this one, likely impact tens if not hundreds of millions of internet users. Recent major tech privacy cases against a single defendant in which three co-leads were appointed, and in which DiCello Levitt was appointed to the leadership structure, include at least:

- *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.)
- *in re PayPal Honey Browser Extension Litigation*, No. 5:24-cv-9470-BLF (ND. Cal.)
- *Kolstedt v. TMX Finance Corp. Svcs. Inc.*, No. 3:23-cv-76 (S.D. Ga.)
- *In re Marriott International Inc. Customer Data Security Breach Litig.*, No. 8:19-md-02879 (D. Md.)

- *Gill, et al. v. Cesars Entertainment Inc.*, No. 2:23-cv-01447 (D. Nev.)

Further, and as a practical matter, employing an odd number of co-leads makes good practical sense in event there exist disagreements regarding case issues or strategy.

Indeed, **this matter has already a perfect example of the need for an odd number of co-leads**, as proposed co-lead counsel here were unable to agree regarding the appropriate procedure for resolving this Response. As explained above and in more detail in the Schwartz declaration, on May 6, 2025, Gary Klinger of Milberg suggested to Mr. Schwartz that Mr. Klinger and his proposed co-lead, Christian Levis of Lowey Danenberg, jointly file a "Notice" to the Court that would (1) notify the Court that the *Chwe* case has been filed and (2) notify the Court that a further filing or filings would be made regarding any motion for leadership, but that in the interim DiCello Levitt, Milberg, and Lowey would engage in good faith discussion regarding a leadership application. If no resolution were reached, multiple further filings might be made.

Mr. Levis disagreed and refused, despite entreaties by his proposed co-lead counsel Mr. Klinger, to issue such Notice, or otherwise to agree to a week-long extension for the Response date.[14]

The result was that no such filing seeking an extension was made. DiCello Levitt respectfully avers that such a refusal to allow a short extension of time for Response, particularly given that the *Chwe* matter has not yet been administratively related,[15] was an unfortunate lack of courtesy. Much more importantly, however, the exchange highlights the potential difficulty in coming to decisions in complex, high stakes litigation, when leadership is embodied in an even number of individuals or firms. *See*, *e.g. In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 14-CV-10318, 2015 WL 1216318, at

[14] As of 8:40 PM Eastern Time (i.e., well after the court closed), Mr. Levis for the first time offered to consent to a proposed extension of time for DiCello Levitt to file a Response to Friday, May 9.

[15] DiCello Levitt provided draft papers regarding administrative relation of the matters to Mr. Levis on May 6, but they have not yet been filed.

*1 (N.D. Ill. Mar. 5, 2015) (Appointing three firms as lead because "Where a disagreement arises within the leadership, the odd-numbered structure will facilitate, at a minimum, a 2–1 resolution…it is foreseeable that an internal conflict could develop in a joint…appointment, to the detriment of the class and the progress of the MDL"); *In re: Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-MD-03126-BMM, 2024 WL 5403460, at *1 (D. Mont. Nov. 1, 2024) ("An odd number of Co-Lead Counsel, as discussed at the hearing, should minimize the need for the Court to become involved in disagreements among Co-Leads."). Milberg and Lowey Danenberg were unable to agree on how best to manage the Response to their leadership application. The Class would not best be served by a structure that relies on the Court to act as tie breaker in the future.

**V. DiCello Levitt Have the Requisite Knowledge and Experience**

DiCello Levitt attorneys have some of the most robust experience in the country respecting complex technology and consumer litigation. Its Privacy, Technology, and Cybersecurity practice group has routinely been recognized as the one of the best in the country, and is the only such group to receive Law360's Cybersecurity & Privacy Group of the Year three years in a row (2020-2022). More broadly, DiCello Levitt was recognized as ALM and the National Law Journal's 2023 Plaintiffs Firm of the Year and 2023 Trial Innovation Firm of the Year, in addition to high-ranking Chambers USA and Benchmark Litigation Rankings. Successful and/or ongoing litigations driven by the Privacy, Technology, and Cybersecurity group include, among many other matters:

- *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.) (co-leading largest of its kind data breach class action, and achieving a class settlement of up to $505.5 million and an additional $1 billion worth of injunctive relief).

- *State of New Mexico v. Facebook Inc.*, No. D-101-cv-2021-00132 (New Mexico) (As commissioned counsel for the State of New Mexico, a team of DiCello Levitt attorneys seeks to hold Facebook accountable for harms arising out of the Cambridge Analytica scandal).

- *In re Facebook Internet Tracking Litigation*, No. 12-md-02314-EJD (N.D. Cal.) (the second top-ten settlement among all data privacy and data breach class actions that DiCello Levitt was responsible for co-leading, resulting in a $90 million class settlement, review of which the Supreme Court recently denied).

- *In re Google RTB Consumer Privacy Litigation*, No. 21-cv-02155 (N.D. Cal.) (ongoing litigation in which DiCello Levitt was appointed to the Plaintiffs' Executive Committee, alleging selling of Google users' personal information).

- *Calhoun et al. v. Google LLC,* No. 20-cv-05146 (N.D. Cal.) (ongoing litigation in which DiCello Levitt co-lead counsel representing a class of Chrome web browser users in privacy litigation, in which the Ninth Circuit Court of Appeals recently reversed the District Court's grant of summary judgment in Plaintiffs' favor).

- *In re: Consumer Vehicle Driving Data Tracking Collection*, 24-md-3115 (N.D. Ga.) (ongoing MDL in which DiCello Levitt was appointed co-lead of the OnStar track plaintiffs' class, in which Plaintiffs have alleged unsanctioned, massive, ongoing data collection through GM vehicles and the OnStar on-board communications system).

- *In Re: Snowflake, Inc., Data Security Breach Litigation*, 24-md-03126 (D. Mont.) (ongoing MDL in which DiCello Levitt was appointed co-lead counsel involving a cluster of breaches of the Snowflake cloud platform that affected dozens of major corporate entities and allegedly resulted in the exfiltration of the personal information of over 500 million individuals).

- *In re Consumer Vehicle Driving Data Litig.*, No. 1:24-md-03115-TWT (N.D. Ga.) (DiCello Levitt attorney appointed Co-Lead Counsel, GM Track, in case involving consumer data tracking in vehicles).

- *In re Marriott International Inc. Customer Data Security Breach Litig.*, No. 8:19-md-02879 (D. Md.) (DiCello Levitt attorneys are Plaintiffs' Co-Lead Counsel in major ongoing data breach litigation impacting millions of customers).

- *In re Social Media Harm Litig.*, No 22-MD-3047 (N.D. Cal) (DiCello Levitt counsel appointed to Plaintiffs' Steering Committee in substantial case involving social media addiction)

- *In re T-Mobile Customer Data Security Breach Litig.*, No. 4:21-MD-03019 (W.D. Mo.) (DiCello Levitt attorneys served on Steering Committee in matter that reached $350 million settlement)

- *In re MOVEit Customer Data Security Breach Litig.*, No. 1:23-md-03083 (D. Mass.) (DiCello Levitt attorneys chair of Law and Briefing committee in ongoing major data breach litigation with multiple settlements of several defendants).

- *Kolstedt v. TMX Finance Corp. Svcs. Inc.*, No. 3:23-cv-76 (S.D. Ga.) (Plaintiffs' Co-Lead Counsel in major data breach litigation, with settlement valued at approximately $38 million in combination debt relief with cash funds to 4 million class members).[16]

DiCello Levitt also has the uniquely valuable resource of the DiCello Levitt Trial Center, a platform for lawyers to test their cases through focus grouping, storytelling, and a science-informed method of trial preparation. The Trial Center's work has contributed to more than $2 billion in verdicts since the firm's inception in 2017. The success of that program was further evident in DiCello Levitt's recent win, at trial, of a $102.6 million class verdict in *Siqueiros, et al. v. General Motors LLC*, No. 16-cv-07244 (N.D. Cal.).

As interim class counsel here, the DiCello Levitt team would continue to commit the same resources and effort to this case as it has committed to other successful class action litigations.

Two partners whom DiCello Levitt expect to drive this litigation are Daniel Schwartz and David Straite.

**i. Daniel R. Schwartz**

Leading DiCello Levitt's efforts here, and with the full and enthusiastic support of the firm, is Daniel Schwartz. A former Ninth Circuit term clerk (Bea, J.), Mr. Schwartz is a partner in the Firm's Chicago office, and was recently appointed as the sole Chair of Law and Briefing in the large *in re PayPal Honey Browser Extension Litigation*, No. 5:24-cv-9470-BLF (ND. Cal.). Mr. Schwartz is also leading or co-leading his law firm's efforts in: *Matthew Hodge et al. vs. North Carolina Department of Public Safety et al.*, No. 5:19-cv-478 (E.D. N.C) and *McDaniel v. Wisconsin Department of Corrections*, No. 20-cv-4571 (Wisc.), two putative class actions regarding underpayment of corrections office which were each certified by the trial court; *Sowa v. Mercedes Benz*, No. 1:23-cv-000636 (N.D. GA), a putative class action alleging a significant automobile defect; *State of New Mexico ex rel Raul Torrez v. Facebook*, No. D-101-CV-2021-00132 (NM), commissioned counsel in New

[16] *See also* Schwartz Decl. ¶ 21.

Mexico's ongoing litigation against Facebook arising out of the Cambridge Analytica scandal; *City of Baltimore ex rel. Ebony Thompson v. Draftkings Inc. et al* (No. 24-cv-25-00268), commissioned counsel in litigation against DraftKings and FanDuel in a recently filed case on behalf of the City of Baltimore alleging the mobile gaming companies' practices violate consumer rights; and *In the Matter of the Petition of GRACE OCEAN PRIVATE LIMITED, et al., for Exoneration from or Limitation of Liability* Civ. No. JKB-24-0941 (D. Md.), representing Baltimore as commissioned counsel in its efforts to hold accountable those responsible for the Key Bridge disaster.

While at multiple major international law firms – including Boies Schiller Flexner, Quinn Emanuel Urquhart & Sullivan, and Kirkland & Ellis – Mr. Schwartz also gained experience suing and defending major tech companies (former clients include AliPay, the world's largest mobile payment provider, and Qualcomm, a major semiconductor company, and Mr. Schwartz was instrumental on the plaintiffs' side in major litigation involving internet privacy against Amazon). Mr. Schwartz leverages his skills and experience—including the valuable experience he gained working for large multinational law firms—to vigorously advocate on behalf of his clients.

Mr. Schwartz has the full backing of his firm, which takes pride in putting its younger attorneys forward for Lead and Co-Lead positions and supporting them with all manner of the firm's resources when it does.[17]

**ii. David Straite**

Working with and supporting Mr. Schwartz on this matter is David Straite, one of the country's leading privacy lawyers. David Straite is a partner in DiCello Levitt's New York office, and is one of the nation's leading voices for the recognition of property rights in personal data, a 10-year effort culminating in the Ninth Circuit's landmark April 2020 decision in *In re: Facebook Internet Tracking Litigation* and the Northern District of California's March 2021 decision in *Calhoun v. Google*, both of which he argued. David also

---

[17] *See* Schwartz Decl. ¶¶ 19-20.

successfully argued for the extraterritorial application of the Computer Fraud and Abuse Act in 2019 in *In re: Apple Device Performance Litigation*, and filed the first-ever data privacy class action under seal to address a dangerous website vulnerability under Court supervision in *Rodriguez v. Universal Prop. & Cas. Ins. Co*. As M.I.T. Technology Review magazine put it, David is "something of a pioneer" in the field. He also protects investors in securities, corporate governance, and hedge fund litigation in federal court and in the Delaware Court of Chancery, admitted to practice in both New York and Delaware.

David's awards and recognitions include:

- 500 Leading Global Cyber Lawyers, Lawdragon (2025)
- Legal Lions of the Week, Law360 (2024)
- 500 Leading Plaintiff Financial Lawyers, Lawdragon (2019-2024)
- New York Metro Super Lawyers—Class Action & Mass Torts (2019-2025)
- MVP – Cybersecurity & Privacy, Law360 (2022)
- Plaintiffs' Lawyers Trailblazer, The National Law Journal (2022)

David is a former adjunct professor at Yeshiva University's Sy Syms School of Business, teaching Business Law and Ethics every fall semester from 2015-2021. He has co-authored *Dobbs Ruling Means It's Time to Rethink Data Collection* in Law360 (2022), *Google and the Digital Privacy Perfect Storm* in E-Commerce Law Reports (UK) (2013), authored *Netherlands: Amsterdam Court of Appeal Approves Groundbreaking Global Settlements Under the Dutch Act on the Collective Settlement of Mass Claims*, in The International Lawyer's annual "International Legal Developments in Review" (2009), and was a contributing author for Maher M. Dabbah & K.P.E. Lasok, QC, Merger Control Worldwide (2005). He speaks frequently on topics related to both privacy and investor protection.

David co-chairs the firm's Diversity, Equity and Inclusion Committee, which seeks to promote diversity within the firm and the legal profession generally. In 2022, David was also appointed to the invitation-only LGBTQ Rights Committee of the New York City Bar

Association, whose mission is to address "legal and policy issues in legal institutions and in the court system that affect lesbian, gay, bisexual, transgender and queer individuals." His three-year term expires in the summer of 2025. David also co-chairs the firm's Artificial Intelligence Working Group. Prior to joining the firm, David was a partner with Kaplan Fox & Kilsheimer LLP, and helped launch the US offices of London-based Stewarts Law LLP before that, where he was the global head of investor protection litigation. Prior to joining the plaintiffs' bar, David was an associate with the New York office of Skadden Arps Slate Meagher & Flom LLP.

## VI. Ability to Work With Other Applicants And Opposing Counsel

Attorneys at DiCello Levitt take pride in their collegiality, and their willingness to work with others. A great many of the cases which DiCello Levitt files are filed along with co-counsel, and DiCello Levitt attorneys have successfully worked with co-counsel following leadership appointments. Currently pending cases in which DiCello Levitt attorneys are working with or otherwise have been appointed with attorneys at proposed co-lead Milberg include at least:

- *Laquita Oliver et al v. Navy Federal Credit Union*, No. 23-cv-1731 (E.D.VA) (Mr. Schwartz is working extensively with Milberg partner Glen Abramson)
- *Matthew Hodge et al. vs. North Carolina Department of Public Safety et al.*, No. 5:19-cv-478 (E.D. N.C) (Mr. Schwartz working extensively with Milberg partner Patrick Wallace).
- *in re PayPal Honey Browser Extension Litigation*, No. 5:24-cv-9470-BLF (ND. Cal.) (Mr. Schwartz and Mr. Klinger both appointed to Plaintiffs' executive committee)
- *in re Bio-Lab Class Actions*, No. 1:24-cv-04407-SEG (N.D. GA) (Mr. Klinger appointed to Plaintiffs' Executive Committee in case co-led by DiCello Levitt partner Daniel Flynn)

- *In re Snowflake Data Security Breach Litig.*, No. 2:24-md-03126 (D. Mont.) (DiCello Levitt counsel Amy Keller co-lead, working with Mr. Klinger who is PSC/settlement committee member)
- *In re Consumer Vehicle Driving Data Litig.*, No. 1:24-md-03115-TWT (N.D. Ga.) (DiCello Levitt counsel Amy Keller co-lead, working with Mr. Klinger on PSC)

As explained in the Schwartz Declaration accompanying this motion, the collegiality was further reflected in Mr. Klinger's interactions with Mr. Schwartz, which have reflected the longstanding and productive relationship between attorneys at their firms.

## VII. Willingness to Devote Resources

DiCello Levitt is a well-established, successful law firm that has the resources and personnel necessary to pursue a case of this magnitude, as we have demonstrated in numerous similar class actions. As one court recently put it following final approval of a matter co-led by a DiCello Levitt attorney:

> The Court has observed class counsel's diligence, ability, and experience in pleadings and motion practice; in regularly-conducted status conferences; in their presentation of the settlement to this Court; and in their attention to matters of notice and administration after the announcement of the settlement. The excellent job class counsel have done for the class is also demonstrated in the benefits afforded by the settlement.

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *6. (N.D. Ga. Mar. 17, 2020). DiCello Levitt will provide this litigation with its full backing, leveraging its resources as one of the nation's leading plaintiffs' firms.[18]

## VIII. Conclusion

For the foregoing reasons, DiCello Levitt respectfully suggests that it be appointed into a co-Leadership role in this litigation. The case will be challenging, fast-paced, and likely characterized by multiple matters of first impression. DiCello Levitt is the ideal firm for a co-leadership position.

---

[18] DiCello Levitt's firm resume is attached as Ex. B to the Schwartz Declaration.

Respectfully submitted,

DATED: MAY 7, 2025

/s/ *Brian O. O'Mara*
Brian O. O'Mara

**DICELLO LEVITT LLP**
4747 Executive Dr., Suite 240
San Diego, CA 92121
Telephone: (619) 923-3939
briano@dicellolevitt.com

Daniel R. Schwartz (*pro hac vice* pending)
Rebecca Trickey (*pro hac vice* pending)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
dschwartz@dicellolevitt.com
rtrickey@dicellolevitt.com

David A. Straite (*pro hac vice* pending)
**DICELLO LEVITT LLP**
485 Lexington Ave., Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
dstraite@dicellolevitt.com

*Counsel for Minchul Paul Chwe*

**Certificate of Service**

I, Brian O. O'Mara, declare that I am over 18 years of age and not a party to this action. My business address is 4747 Executive Dr., Suite 240, San Diego, CA 92121. I hereby certify that a true and correct copy of the foregoing was served via email on all counsel of record and counsel for Adobe on the 7th day of May, 2025.

*/s/ Brian O. O'Mara*
Brian O. O'Mara