ANGEL T. NAKAMURA (SBN 205396)
Angel.Nakamura@arnoldporter.com
KRISTINA ILIOPOULOS (SBN 341548)
Kristina.Iliopoulos@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

ESTAYVAINE BRAGG (SBN 341400)
Estayvaine.Bragg@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

JAMI M. VIBBERT (admitted *pro hac vice*)
Jami.Vibbert@arnoldporter.com
DAVID B. SCHWARTZ (admitted *pro hac vice*)
David.Schwartz@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Facsimile: 212.836.8689

DANIEL E. RAYMOND (admitted *pro hac vice*)
Daniel.Raymond@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison, Street Suite 4200
Chicago, IL 60602-4321
Telephone: 312.583.2300
Facsimile: 312.583.2360

*Attorneys for Defendant Adobe Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

IN RE: ADOBE DATA TRACKING LITIGATION

This Document Related to: All Actions

Case No. 5:25-cv-03032-NW

**DEFENDANT ADOBE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge: Hon. Noël Wise
Date: April 15, 2026
Time: 9:00 a.m.
Location: Courtroom 3, 5th Floor

**NOTICE OF MOTION AND MOTION TO DISMISS**

**PLEASE TAKE NOTICE THAT** on April 15, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Noël Wise, located at 280 South 1st Street, San Jose, CA 95113, 5th Floor, Courtroom 3, Defendant Adobe Inc. will and hereby does respectfully move for an order dismissing the claims against Adobe brought by Plaintiffs Nicholas Rapak, Bianca Johnston, Minchul Paul Chwe, Dana Olita, and David Concepcion in the above-captioned cases, as set forth in the accompanying Memorandum, and pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice (filed concurrently), the Proposed Order, any Reply Memorandum, the pleadings and files in this consolidated action, and such other matters as may be presented at or before the hearing.

Dated: December 11, 2025

Respectfully submitted,

*/s/ Angel Tang Nakamura*

Angel Tang Nakamura (SBN 205396)
Angel.Nakamura@arnoldporter.com
Kristina Iliopoulos (SBN 341548)
Kristina.Iliopoulos@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone: 213.243.4000
Facsimile: 213.243.4199

Jami Vibbert (admitted *pro hac vice*)
Jami.Vibbert@arnoldporter.com
David B. Schwartz (admitted *pro hac vice*)
David.Schwartz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Facsimile: 212.836.8689

Daniel E. Raymond (admitted *pro hac vice*)
Daniel.Raymond@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison, Street Suite 4200
Chicago, IL 60602-4321
Telephone: 312.583.2300
Facsimile: 312.583.2360

Estayvaine Bragg (SBN 341400)
Estayvaine.Bragg@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

*Attorneys for Defendant Adobe Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION AND ISSUES TO BE DECIDED ........ 1

BACKGROUND ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. PLAINTIFFS' FAILURE TO ADEQUATELY PLEAD LACK OF CONSENT IS FATAL TO CAUSES OF ACTION ONE THROUGH SIX ........ 6

II. PLAINTIFFS' CIPA CLAIMS FAIL FOR SEVERAL REASONS. ........ 6

A. Plaintiffs' CIPA Section 631 Claim Should Be Dismissed for Several, Independent Reasons. ........ 7

B. Plaintiffs' CIPA Section 632 Claim Fails Because Adobe Did Not Use or Intend To Use Any Device To Record Confidential Communications ........ 13

C. Plaintiffs' CIPA Section 638.50 & 638.51 Claim Fails Because the ECID Is Assigned, Not User-Generated ........ 16

III. PLAINTIFFS' PRIVACY CLAIMS FAIL UNDER BOTH COMMON LAW AND THE CALIFORNIA CONSTITUTION. ........ 18

A. Routine Web Tracking Is Not a "Highly Offensive" Invasion of Privacy ........ 19

B. Plaintiffs Do Not Plead That They Had a "Reasonable Expectation of Privacy" ........ 20

IV. PLAINTIFF'S CDAFA CLAIM FAILS TO SUFFICIENTLY ALLEGE DAMAGES ........ 21

V. PLAINTIFFS' UCL CLAIM FAILS BECAUSE THEY DO NOT HAVE STANDING AND FAIL TO ADEQUATELY ALLEGE UNLAWFUL OR UNFAIR CONDUCT ........ 22

A. Plaintiffs Lack Statutory Standing To Bring a UCL Claim ........ 22

B. Plaintiffs Fail To Adequately Allege Unlawful or Unfair Conduct. ........ 24

VI. UNJUST ENRICHMENT AND INJUNCTIVE RELIEF ARE NOT SEPARATE CAUSES OF ACTION ........ 25

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer v. United Rentals, Inc.*,
195 Cal. App. 4th 807 (2011) ....................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*Beltran v. Doctors Med. Ctr. Of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) ....................9

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................25

*Brown v. Google*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................22

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................14

*Chrisman v. City of L.A.*,
155 Cal. App. 4th 29 (2007) ....................21

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................7

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................21, 22

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................9

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....................20, 21

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................18, 19, 22

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) ....................21, 22

*Doe v. Davita Inc.*,
2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ........ 9

*Doe v. Eating Recovery Center, LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 6, 7, 10, 11

*Doe v. Kaiser*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 22

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 22

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 23

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 18

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015) ........ 16

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 14

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........ 25

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 17

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 23

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 24

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal 2019) ........ 18

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 19

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 9

*Greenley v. Kochava, Inc.*,
684. F. Supp. 3d 1024 (S.D. Cal. 2023) ....................15

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................13, 25

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................19

*Harmon v. Hilton Grp.*,
2011 WL 5914004 (N.D. Cal. Nov. 28, 2011) ....................24

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ....................19, 20

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) ....................7

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....................8, 9, 10, 22

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....................7, 11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................18, 19

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................23

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ....................23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................19, 21

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ....................9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................23

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................14, 15

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ....................17, 18

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) ....................23

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)....................10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................19

*Lozano v. City of L.A.*,
73 Cal. App. 5th 711 (2022) ....................15

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................9, 14

*Mishiyev v. Alphabet, Inc.*,
444 F. Supp. 3d 1154 (N.D. Cal. 2020), *aff'd,* 857 F. App'x 907 (9th Cir. 2021) ....................25

*Mitchener v. Curiositystream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ....................17, 18

*Moore v. Centrelake Med. Grp.*,
83 Cal. App. 5th 515 (2022) ....................23, 24

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ....................7

*People v. Gentry*,
234 Cal. App. 3d 131 (1991) ....................21

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025)....................6, 22, 25

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. Apr. 1, 2025)....................17

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)....................11

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................14, 15

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................11

*Rodriguez v. Ford Motor Corp.*,
722 F. Supp. 3d 1104 (S.D. Cal. March 15, 2024) ....................11

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................14

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ....................11

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................8

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) ....................5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................6

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................15

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................11

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................17, 18

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................7

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ....................10

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................9

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................8, 9

**Statutes**

Cal. Bus. & Prof. Code § 17204 ....................22

Cal. Penal Code § 502 ....................6, 21, 22

Cal. Penal Code § 631 .................... *passim*

Cal. Penal Code § 632 ......... 13
Cal. Penal Code § 638.50(c) ......... 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ......... 5

**Constitutional Provisions**

California Constitution § 1 ......... 18

## INTRODUCTION AND ISSUES TO BE DECIDED

Plaintiffs' Consolidated Amended Class Action Complaint, ECF No. 78 ("Complaint" or "Compl."), tries to turn Defendant Adobe Inc.'s ("Adobe") harmless internet technology into a spy-novel tale of nefarious actions allegedly undertaken by Adobe, invoking phrases like "the worst kind of surveillance capitalism" and "wanton spying." Compl. ¶¶ 1, 9.

Stripped of its alarmist rhetoric, the Complaint merely alleges that Adobe helps its enterprise customers (website and app owners) use data collected from their own websites and apps for their own purposes, such as updating website functionality, improving users' experiences, and advertising to their own users. And to enable those services, it alleges that the Adobe Experience Cloud software used by Adobe's enterprise customers assigns website visitors a customer-specific "Experience Cloud ID" ("ECID") when they visit a customer's website or app. The only alleged benefit to Adobe is that Adobe's products permit those same enterprise customers to engage in targeted advertising. In other words, the supposed nefarious purpose behind Adobe's "surveillance network" is Adobe providing analytics and advertising services to its customers—services that have become the foundation for how websites work.

The gap between Plaintiffs' expansive theories and their slender factual allegations underscores why none of their claims survive dismissal. Most tellingly, even though this entire case is about selling targeted advertising, not a single Plaintiff ***even alleges*** he or she received or viewed a targeted advertisement from Adobe. In fact, Plaintiffs do not allege that Adobe sold any website or app user data, disclosed Plaintiffs' identities, created an identity graph using their data, or caused them any tangible harm. Instead, the Complaint substitutes generalized technical descriptions of Adobe's products for actual particularized facts about what happened to Plaintiffs. But much more is required. Plaintiffs do not identify when they visited the relevant websites or apps, what (if any) consent they provided or what disclosures they received, what information Adobe allegedly captured during those visits, or how those facts amount to any violation of law. These omissions are fatal to their claims. Specifically:

- Plaintiffs' claims under the California Invasion of Privacy Act ("CIPA"), common-law and constitutional privacy doctrines, and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") all fail because they do not adequately plead lack of consent. Lack of consent is an essential element of each claim, yet Plaintiffs offer only conclusory assertions that they did not consent. They allege no facts about what disclosures they saw, what terms they agreed to, or how consent was supposedly absent.
- Plaintiffs' CIPA Section 631 claim fails because Plaintiffs do not identify any "contents" of any communication that Adobe allegedly intercepted, do not allege that Adobe "read" or "attempted to read" communications "while in transit," and do not allege that the non-resident Plaintiffs had their communications intercepted in California. Adobe also falls within the party exception because it is a service provider that acts as an extension of its enterprise customer (the website or app owner). Plaintiffs' CIPA Section 632 claim fails because Adobe did not use a device, Plaintiffs' routine web browsing does not involve "confidential communications," and even if it did, there are no allegations Adobe intended to record Plaintiffs' confidential communications. Finally, Plaintiffs' CIPA Section 638.50 claim fails because the technology at issue here is not a "trap and trace device."
- Plaintiffs' common law and California Constitutional privacy claims fail because Adobe's alleged "tracking" of website visits is not "highly offensive" or "egregious" as required under California law and Plaintiffs plead no reasonable expectation of privacy in visiting public facing websites.
- Plaintiffs' CDAFA claim fails because Plaintiffs do not allege any unauthorized access, damage, or loss to any computer or system.
- Plaintiffs' Unfair Competition Law ("UCL") claim fails because Plaintiffs do not allege any economic injury or lost money or property and they fail to sufficiently allege any predicate "unlawful" or "unfair" act to support their claim.
- Finally, Plaintiffs' unjust enrichment and injunctive relief claims are remedies, not standalone causes of action and cannot survive absent a viable underlying claim.

Plaintiffs' overwrought narrative of "wanton spying" collapses under its own weight. The Complaint's allegations merely demonstrate that Adobe provided services to its website and app customers. That is why none of the Plaintiffs allege that Adobe sold their data, disclosed their identities to any third party, or delivered a single targeted advertisement to them. Having failed to plead any actionable conduct, Plaintiffs' claims should be dismissed with prejudice.

## BACKGROUND

By Plaintiffs' own allegations, Adobe's Experience Cloud tools allow enterprise customers to analyze and improve their websites and advertising. Compl. ¶¶ 67-73, 78-80 (alleging Adobe's clients use these products for their own analytics, identity resolution, and ad delivery purposes). Plaintiffs admit these are "innocuous purposes" (*id.* ¶ 1), but in an attempt to create actionable conduct where there is none, Plaintiffs make fanciful, conclusory, and often false allegations to reimagine this software as a global surveillance machine that generates "profiles on nearly all (if not all) Americans on the Internet" (*id.*). But the purported great evil driving this "surveillance network" (*id.* ¶ 2) is nothing more than "targeted ads" (*id.* ¶¶ 2, 87) by which Plaintiffs mean Adobe's "[enterprise] customers . . . buy, manage, and optimize advertisements directly through Adobe" (*id.* ¶ 78). In other words, the alleged nefarious purpose behind Adobe's "surveillance network" is Adobe providing advertising services to the same enterprise customers that are using the Adobe Experience Cloud products on their websites and apps. *See id.* ¶ 78 ("Adobe encourages customers to integrate Adobe Advertising with its other products precisely to provide this hyper-specific type of targeting and ad bidding."); ¶ 87 ("Better matching leads to more targeted ads being served for Adobe [enterprise] clients.").

To attempt to bolster these circular and conclusory allegations, Plaintiffs make general allegations about Adobe's software's functionality, but they do not support Plaintiffs' allegations of a purportedly nefarious scheme. For example, as Plaintiffs' own cited materials show, the ECID—the "Experience Cloud Identifier" that "Adobe creates and assigns," *id.* ¶ 3—is domain-specific by design and cannot track users across unrelated websites. Relying on Adobe's publicly available materials, Plaintiffs correctly allege that the ECID is used across Experience Cloud

products and allows an enterprise customer to track a device across its own (not other customers') web properties. *Id.* ¶¶ 39, 41. But Plaintiffs admit that this capability is "innocuous" (*id.* ¶ 1), so they stretch to allege that Adobe "uses the ECID framework to track unique user[s] across the websites and online services owned by ***different*** companies." *Id.* ¶ 41. But the publicly available Adobe product materials cited by Plaintiffs (including diagrams cited in the Complaint) state precisely the opposite. The ECID is "derived mathematically from the [enterprise customer's] organization ID and the demdex ID" and is therefore "unique to the domains controlled by [a single enterprise customer] and lets that enterprise [and only that enterprise] track and share visitor data across solutions in the Experience Cloud." Request for Judicial Notice ("RJN") Ex. 1 at 4-5 (cited in Compl. ¶¶ 41-43, fig. 2-4, n.10-12); *see* Compl. ¶ 42, fig. 40. Said another way, the ECID cannot possibly allow Adobe to track individuals across the internet because the ECID is specific and unique to each enterprise customer and a website visitor's device would be associated with different ECIDs for different enterprise customers. *See* RJN Ex.1 at 5; Compl. ¶ 42, fig. 4.

But, most damningly, the sparse specific allegations about Plaintiffs fail to support any of Plaintiffs' causes of actions, even if Adobe's products functioned in the manner Plaintiffs claim. This mismatch between sweeping allegations, on the one hand, and the utter lack of Plaintiff-specific facts, on the other, is the throughline of every claim Plaintiffs assert. In fact, Plaintiffs only allege brief, undated anecdotes of routine and everyday website usage that do not establish what and where any alleged tracking occurred. For instance, Plaintiff Rapak visited the Marriott website (Compl. ¶ 94); Plaintiff Johnston visited WebMD, CVS, and the Walgreen's websites (*id.* ¶¶ 102-03); Plaintiff Chwe visited CITI, ESPN, and Delta's websites (*id.* ¶ 111); Plaintiff Olita visited Amazon, Wells Fargo, CITI, and Capital One's websites (*id.* ¶ 117); and Plaintiff Concepcion visited UCSF's website (*id.* ¶ 124).

Plaintiffs built this entire case around the claim that Adobe sells targeted advertising. But, not a single Plaintiff ever alleges that they received or viewed a targeted advertisement from Adobe as a result of their activities on Adobe's enterprise customers' websites. And Plaintiffs are completely silent on when they visited these websites, how often, or what specifically they were

doing on these websites. While Plaintiffs all allege that Adobe's tracking code was present on these websites, *id.* ¶¶ 94-95, 102-04, 112, 118, 124-25, not a single Plaintiff discloses what privacy consents they made on these websites or alleges with any specificity what, if anything, Adobe's tracking code allegedly captured about their various website visits. Further, not a single Plaintiff claims that (i) Adobe sold their data to or shared their data with any third party; (ii) Adobe defeated their browser or other settings to block tracking technology; or (iii) they did not otherwise consent, or the website providers did not disclose, the use of tracking technology. Instead, Plaintiffs rely on speculation and supposed expert testimony that is completely untethered to the Plaintiffs' experiences or the Plaintiffs themselves.

Plaintiffs' allegations fail to connect any of their individual experiences to the sprawling and speculative narrative about Adobe. Despite all of this, Plaintiffs assert nine flawed causes of action and seek to represent two nationwide classes, all of which should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must do more than merely incant the elements of the cause of action. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Factual allegations "must be enough to raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 545–47, 555; *see also, e.g.*, *Iqbal*, 556 U.S. at 677–78 (2009) (similar). The Court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).[1]

[1] The Complaint alleges that "California law applies to every Class Member's claims." Compl. ¶ 179. For purposes of this Motion, and unless otherwise stated, Adobe applies California law to support its arguments for dismissal. However, Adobe reserves the right to raise all arguments later in this litigation that Plaintiffs' California statutory, constitutional, and common law claims do not apply extraterritorially to non-California Plaintiffs.

# ARGUMENT

## I. PLAINTIFFS' FAILURE TO ADEQUATELY PLEAD LACK OF CONSENT IS FATAL TO CAUSES OF ACTION ONE THROUGH SIX.

As an initial matter, Plaintiffs' claims under the common-law right to privacy (first cause of action), the right to privacy enshrined in the California Constitution (second cause of action), CIPA (third through fifth causes of action), and the CDAFA (sixth cause of action) all fail for the same reason: Plaintiffs do not adequately plead a lack of consent, a required element of each of these claims. *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *2–3 (N.D. Cal. Oct. 27, 2025); *see Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (CIPA); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (invasion of privacy and constitutional claim); Cal. Penal Code § 502 (CDAFA).

To satisfy this element, Plaintiffs must allege more than a bare assertion that they did not consent to the challenged tracking. *Perez*, 2025 WL 3085786, at *2–3 (dismissing claims because plaintiffs failed to allege "what they knew of the [privacy] policy [on the website], when they knew it, and whether that information had any effect on their decisions related to the site"). Yet Plaintiffs rely exclusively on identical conclusory statements that they did not consent. Compl. ¶¶ 97, 106, 112, 118, 125. They plead ***no*** facts supporting that conclusion—no allegations about the disclosures presented or privacy policies available on the websites they visited, whether they reviewed or accepted them, or whether those websites obtained their consent for the use of analytics or advertising tools. Without any factual basis for their claimed lack of consent, Plaintiffs' conclusory allegations cannot sustain their claims. *Perez*, 2025 WL 3085786, at *3.

## II. PLAINTIFFS' CIPA CLAIMS FAIL FOR SEVERAL REASONS.

Plaintiffs assert three claims under CIPA—California's wiretapping law. Even before addressing the flaws with Plaintiffs' allegations, CIPA's ambiguous statutory text and the expanding application of its 1967-era terms to modern web technology underscore why dismissal is appropriate. To put it simply, "[t]he language of CIPA is a total mess." *Doe v. Eating Recovery Center, LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). CIPA was a "mess from the

get-go" and the "mess gets bigger and bigger as the world continues and as courts are called upon to apply CIPA's already-obtuse language to new technologies." *Id.* Frankly, the law is so muddled "companies have no way of telling whether their online business activities will subject them to liability" under CIPA and are faced with an impossible choice—engage in normal online behavior in line with competitors or potentially incur punitive civil penalties and criminal liability imposed by CIPA. *See id.*

Until the legislature "bring[s] CIPA into the modern age," this Court should apply the rule of leniency and "resolve CIPA's many ambiguities in favor of the narrower interpretation." *Id.*; *see also Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001).

### A. Plaintiffs' CIPA Section 631 Claim Should Be Dismissed for Several, Independent Reasons.

Plaintiffs allege Adobe violated the second clause of CIPA Section 631(a) (third cause of action) by "willfully, and without consent, read[ing] or attempt[ing] to read, or learn the contents and meaning of, Plaintiffs' . . . communications with online services" while the same was "in trans[]it or passing over a wire." Compl. ¶ 215.[2] Plaintiffs' claim fails for four reasons. First, Plaintiffs do not include specific allegations that Adobe read or attempted to learn the "contents" of any of their communications. Second, Plaintiffs do not (and cannot) allege Adobe "read" or "attempted to read" the contents of any communication "while in transit." Third, because Adobe as a service provider is merely an extension of its enterprise customers, it falls within the "party exception" of Section 631(a). And, finally, certain Plaintiffs—who do not reside in California or

[2] The Complaint also alleges violations of the third and fourth clauses of Section 631(a), but both require a predicate violation of the second clause. *See Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123 (C.D. Cal. 2024) ("violation under the third clause . . . is contingent upon a finding of a violation of the first or second clause" (citation omitted)); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (violation under fourth clause requires "underlying third-party violation" of preceding clauses). The Complaint does not allege a violation of the first clause, which "by its plain terms—does not apply to technologies other than telegraphs and telephones." *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756 (N.D. Cal. 2023).

perform any of the acts alleged in California—cannot maintain a Section 631 claim.[3]

**i. Plaintiffs Allege No Interception of "Content".**

Adobe cannot be liable for wiretapping under Section 631 because Plaintiffs do not allege that Adobe intercepted the contents or meaning of their communications with the online websites they visited. Although Plaintiffs claim to have visited certain websites, the Complaint is deafeningly silent on the ***substance*** of any communication with those websites, such as what Plaintiffs entered, what they conveyed, or any other "intended message." Without any such allegations of content, their Section 631 claim must fail.

The second clause of Section 631(a) penalizes a person who "reads, or attempts to read, or to learn the ***contents*** or ***meaning*** of any message, report, or communication." Cal. Pen. Code § 631 (emphases added). Only "information concerning the substance, or meaning of [a] communication is protected." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021); *see Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017–18 (C.D. Cal. 2023) (same). "Contents" are the "intended message conveyed by the communication" not "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Record information, which is not content and cannot give rise to liability, consists of things like "the name, address, and subscriber number or identity of a subscriber or customer." *Saleh*, 562 F. Supp. 3d at 517.

Here, Plaintiffs do not allege that Adobe intercepted the actual ***contents*** of any substantive communication ***with the Plaintiffs***. They all make an identical, conclusory, and unsupported allegation that "Adobe's tracking technology caused [his/her] browser to send detailed information regarding the content of [his/her] communications." *See* Compl. ¶¶ 97, 106, 112, 118, 125. But, not a single Plaintiff alleges what substantive communication they engaged in on ESPN, Marriott, or any website, or identifies any communication they believe Adobe actually intercepted. Take, for instance, Plaintiff Johnston. She alleges that she is a patient of CVS and Walgreens and visits

[3] Unlike the choice of law analysis referenced *supra* n.1, this argument assumes California law applies, but still requires dismissal of activities occurring outside of California.

those websites as well as WebMD's website. Compl. ¶¶ 102-03. That is it. She does not allege any actual substance of conversations that she believes Adobe intercepted while she visited those websites. Instead, she rests on speculation and conjecture by saying generally "[n]etwork traffic shows" that when a person visits these websites, Adobe intercepts the ECID, full-string URLs, and the Company ID. *Id.* ¶ 107. Each Plaintiff repeats this pattern. *See* Compl. ¶¶ 94, 98 (Rapak); 111, 113 (Chwe); 117, 119 (Olita); 123, 126 (Concepcion). Courts find such hypothetical allegations insufficient to state a claim. *See, e.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) (dismissing CIPA claim because plaintiffs provided only examples of what a hypothetical patient may experience as opposed to "what information they each provided to [the website], via their browsing activity"); *Beltran v. Doctors Med. Ctr. Of Modesto*, 2025 WL 1635467, at *5–6 (E.D. Cal. June 9, 2025) (same); *Doe v. Davita Inc.*, 2024 WL 1772854, at *2–3 (S.D. Cal. Apr. 24, 2024) (same); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1038 (S.D. Cal. 2024) (finding allegations about what the third-party vendor's software ***could*** record insufficient to state a claim).

But, even if Adobe collected these data points from Plaintiffs (which Plaintiffs do not allege), none of these constitute content. *See In re Zynga*, 750 F.3d at 1117 (URLs, alone, are not content.); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (same); *Heiting*, 709 F. Supp. 3d at 1018 (finding "personal identifiers, device identifiers, commercial information, electronic and sensory data, browser information, operating system information" and other information does not include "any substantive communications"). Courts in this Circuit have dismissed CIPA claims where plaintiffs presented similar (or even additional facts) for failing to sufficiently allege intercepted "contents." *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (dismissing complaint to the extent that it alleged "non-content information," including "IP addresses, locations, browser types, and operating systems"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816 at *14 (N.D. Cal. Feb. 2, 2021) (data on when, how often, and for how long a user opened certain apps on his smartphone could not support a CIPA claim); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("Taken together, this body of caselaw

suggests that CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not."). This Court should not have to "assume out of whole cloth what the contents of any communications were." *Heiting*, 709 F. Supp. 3d at 1018. As such, for this reason alone, Plaintiffs' Section 631 claim should be dismissed.

**ii. Plaintiffs Do Not Allege Adobe Read Contents "While in Transit".**

Even if Plaintiffs had properly pled the contents of their communications were intercepted by Adobe, their Section 631 claim should be dismissed because Plaintiffs do not and cannot allege facts demonstrating that Adobe attempted to read, or attempted to learn, the contents of any communication "while the [communication] is ***in transit***." Cal. Penal Code § 631(a) (emphasis added). Reading or learning the contents of the communication requires "some effort at understanding the substantive meaning" of the communication. *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024). This "something more" must occur "while" the communication is "in transit"; intercepting the communication with the intent to learn the information at a later date is not enough to satisfy Section 631. *See Eating Recovery Center*, 2025 WL 2971090, at *6.

Here, Plaintiffs allege generally that Adobe "collects" sensitive data; that Adobe "redirects" online user's communications "to its own servers"; and that Adobe uses its technologies to "extract and combine the data." Compl. ¶¶ 67-71. Plaintiffs also allege various other activities by Adobe to allegedly track individuals across the internet and create identity graphs and detailed profiles. *Id.* ¶ 66. But, Plaintiffs do not plausibly allege (1) that Adobe views or reads ***any*** information while it is in transit or (2) that Adobe read any of ***their*** communications (in transit or otherwise). Indeed, the entire theory of this case is that Adobe sells targeted advertising using this information, but not a single Plaintiff alleges that they received targeted advertising from Adobe after interacting with the challenged websites. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing Section 631 claim where plaintiffs did not allege a "coherent story" of how the defendant, LinkedIn, "read the specific

communications between them and the websites they visited" such as by alleging they received targeted advertising "after interacting with the challenged websites"). Courts have not hesitated to dismiss similar allegations. *See, e.g.*, *Heiting*, 728 F. Supp. 3d at 1126; *Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *6; *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (dismissing CIPA claim where plaintiff alleged information was sent to defendant for processing, where defendant only later read the data while it was not in transit); *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Whether Defendants access or even analyze inputs with [website owner's] consent after they have been transmitted to the server and reassembled had no bearing on whether defendants read the communications while they are in transit."). The Court should do the same and dismiss Plaintiffs' Section 631 claim.

#### iii. Adobe Is Merely an Extension or Tool of the Website Owners and Therefore Cannot Be Liable.

Plaintiffs' Section 631 claim also fails because Adobe is an extension of its enterprise customers (the website owners) and falls within the "party exception" of Section 631(a). Section 631(a) contains an exemption from liability for any person who is a party to the communication because a party cannot wiretap or eavesdrop on its own conversation. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022). Courts must determine whether a third party alleged to be in direct violation of Section 631(a) is akin to a "tape recorder" (and thus an extension of a party to the communication and subject to the party exception, *see Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975)), or more like a "friend" secretly listening to a conversation on a phone extension (and thus not subject to the party exception). *See Ribas v. Clark*, 38 Cal. 3d 355 (1985); *Rodriguez v. Ford Motor Corp.*, 722 F. Supp. 3d 1104, 1117–18 (S.D. Cal. March 15, 2024).

Courts have developed different approaches to answer this question looking at whether the third party used the data for their own purposes or has the capability of doing so. *Rodriguez*, 722 F. Supp. 3d at 1117–21 (collecting cases and describing tests). But, the key question the

approaches seek to resolve is whether the hiring of a third party service provider (such as Adobe) to collect information poses a materially enhanced risk to Plaintiffs' privacy, which turns on "the extent the third part[y] w[as] subject to [the website owner's] control." *See Doe v. Kaiser*, 2024 WL 1589982, at *17–18 (N.D. Cal. Apr. 11, 2024).

Here, under any of the approaches, Plaintiffs' own allegations confirm that Adobe is the tape recorder, not the friend listening at the door. Plaintiffs admit that Adobe acts as a service provider to its clients, operating in a vendor-client relationship. *See* Compl. ¶ 25. They further acknowledge that Adobe's tracking technology and Experience Cloud products operate within Adobe's clients' website infrastructure. *Id.* ¶¶ 30-35. And they recognize that Adobe's clients use these products for their own analytics, identity resolution, and ad delivery purposes, not for Adobe's independent use. *Id.* ¶¶ 67-70; 71-73; 78-80. To be sure, Plaintiffs attempt to frame Adobe as "monetizing" their data, but the only factual allegations supporting that claim are that Adobe earns revenue by selling its products to its customers and by enabling those same customers to conduct targeted advertising for their own purposes. *Id.* ¶ 78 ("Adobe's Advertising customers . . . buy, manage, and optimize advertisements directly through Adobe. . . Adobe encourages customers to integrate Adobe Advertising with its other products precisely to provide this hyper-specific type of targeting and ad bidding."); ¶ 85 ("Each of Adobe's services [] are designed to work together to ensure that Adobe's DSP gets a head start on matching individuals to ads."). Even Plaintiffs' allegations about "Cookie Syncing" and "ID Bridging" do not contend that Adobe acted on its own and not at the direction of its enterprise customers. *See id.* ¶ 44. Plaintiffs, thus, plead no facts suggesting that Adobe acted as a third-party eavesdropper, but rather as a mere extension of its customers (parties to the communication), and their Section 631 claim should be dismissed.

**iv. Out-of-State Plaintiffs Fail to Allege a Violation of CIPA Section 631.**

The non-California Plaintiffs' CIPA Section 631(a) claims should be dismissed because the Complaint fails to allege that these Plaintiffs' communications were sent or intercepted in

California. Section 631(a) applies only to communications "being sent from, or received at any place ***within this state***." Cal. Pen. Code § 631 (emphasis added); *see Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing claim because "Plaintiffs fail to allege that the data in question was intercepted in California"). Plaintiff Rapak is not alleged to have ever been a California resident, *see* Compl. ¶ 14, and two other Plaintiffs, Chwe and Olita, no longer reside in California. *see id.* ¶¶ 16-17. The Complaint fails to allege that the communications of these Plaintiffs (while out-of-state residents) were sent or intercepted in California. It is not enough to allege that "events and conduct giving rise to Plaintiff's claims occurred in California" or that "California is the state from which [defendant]'s alleged misconduct emanated." *Hammerling*, 2022 WL 17365255, at *11. That Adobe is headquartered in California and allegations that it compiled or made use of the data in California (Compl. ¶183) are irrelevant to where communications were "sent from" or "received." Cal. Penal Code § 631(a); *Hammerling*, 2022 WL 17365255, at *11. The out-of-state Plaintiffs' Section 631(a) claim should be dismissed.

### B. Plaintiffs' CIPA Section 632 Claim Fails Because Adobe Did Not Use or Intend To Use Any Device To Record Confidential Communications.

Plaintiffs' Section 632 claim (fourth cause of action) fares no better. Section 632 penalizes any "person" who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication[.]" Cal. Penal Code § 632(a). Here, Plaintiffs' Section 632 claim fails because (1) Adobe did not use any device and (2) there are no well-pled allegations that Adobe intended to record confidential communications without consent.

<u>Adobe Did Not Use Any Device</u>. The statutory language is clear: ***only*** the party who "uses" the device can be liable under Section 632. The device here is Adobe's software and services that the various website operators (Adobe's enterprise clients, not Adobe) use on their websites and apps. There is no dispute on this point as Adobe's "technology" is the "electronic amplifying or recording device[]." Compl. ¶ 226. Plaintiffs clearly allege that the "SDK" is a "software development kit," and that Adobe leverages its "software products" to conduct the

allegedly nefarious activities identified in the Complaint. *Id.* ¶¶ 1, 70. Adobe, as a service provider, is not using any software. Instead, Adobe's enterprise customers decide how to use the software products they purchase from Adobe on their websites and control the information collected using the products. Thus, Adobe is not the one using the device to record or eavesdrop and cannot be liable under Section 632.

Adobe Did Not Intend To Record Confidential Communications. First, Plaintiffs' general interactions with a host of different websites are not "confidential" under Section 632. A communication is confidential under Section 632 if one of the parties "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (2002). "Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality, especially if those communications can easily be shared by the recipients of the communications." *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *5 (E.D. Cal. June 9, 2025).

For this reason (and because it is absurd to believe that modern-day internet users are unaware of the use of cookies on websites), "in California, courts have developed a presumption that Internet communications do not reasonably give rise to that expectation [that the conversation is not being overheard or recorded]." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting authorities); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (plaintiffs "must plead unique, definite circumstances" to rebut California's presumption). To do so, a plaintiff must allege something uniquely confidential about the communication itself. *See King*, 2025 WL 1635419, at *5. For instance, courts have found that a plaintiff has an expectation of online privacy in interactions with their healthcare provider in a patient portal where the technology intercepted "data relating to patient portal logins and logouts alongside identifiers for each patient." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791 (N.D. Cal. 2022). Courts have also found the presumption rebutted where Google tracked user activity, despite those users being in private browsing mode. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021).

Plaintiffs, however, fail to allege unique, definite circumstances rebutting California's presumption that Plaintiffs have a reasonable expectation of online confidentiality. Instead, Plaintiffs allege only limited browsing activity, none of which rises to the level of activities they can reasonably expect to be confidential. For instance, Plaintiff Rapak simply alleges that he visited Marriott's website; Plaintiff Johnston alleges she visited WebMD, CVS, and Walgreens; Plaintiff Chwe alleges he visited CITI, ESPN, and Delta; Plaintiff Olita alleges she visited Amazon, Wells Fargo, CITI, and Capital One; and Plaintiff Concepcion alleges she visited the UCSF website. Compl. ¶¶ 94, 102-03, 111, 117, 123. Plaintiffs do not allege what they believe Adobe intercepted that is different than their routine browsing activity on these websites. Plaintiffs do not allege Adobe intercepted information about their healthcare, credit cards, or banking information—they merely generalize that these types of websites may contain this information (not even that it contained their information). Plaintiffs also do not allege they visited these websites in "private browsing" mode such that they did not expect anyone to view their browsing activity. Nothing about these particular activities (visiting public-facing websites) warrants a deviation from the general principle that internet communications are not private. *See Revitch*, 2019 WL 5485330, at *3; *Greenley v. Kochava, Inc.*, 684. F. Supp. 3d 1024, 1053 (S.D. Cal. 2023) (dismissing CIPA Section 632 claim where plaintiff failed to allege why he expected his search terms or other browsing information would be kept private); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (similar); *King*, 2025 WL 1635419, at *5–6 (dismissing CIPA Section 632 claim for failing to show an expectation of privacy in the collection of hotel booking information at a hotel).

Second, Plaintiffs do not allege that Adobe ***intentionally*** eavesdropped on confidential communications by providing services to its various customers. "[D]eploying recording devices that *might* happen to record a confidential communication" without consent is not sufficient to establish intent under the CIPA. *Lozano v. City of L.A.*, 73 Cal. App. 5th 711, 728 (2022) (emphasis in original). In fact, Plaintiffs ***do not even allege*** in their Section 632 cause of action that Adobe intentionally intercepted any confidential communications. *See* Compl. ¶¶ 221-31

(noting in a conclusory fashion that the Plaintiffs did not consent, but failing to allege Adobe "intentionally" eavesdropped or recorded a confidential communication).

Adobe is a service provider that sells its technology and services to its customers. Adobe's customers then decide what information to collect using Adobe's software, when to collect the information, and what to do with it. As the seller and servicer, Adobe did not (and could not) have intended to record *anything*, let alone Plaintiffs' confidential communications. Courts have found that service providers that "installed and maintained" a recording system, "enabled and used the audio recording feature," and "instructed the [defendants] on how to use the system" are not liable under Section 632. *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at *1, 6-7, 10, 16 (C.D. Cal. July 29, 2015) (dismissing CIPA Section 632 and common law invasion of privacy claims because the company was merely the "seller and installer" and, thus, there were no allegations that the company acted "intentionally" in eavesdropping on the confidential communications). Adobe's actions here are even more removed than the defendant in that case. Unlike that company, which enabled and used the audio recording feature, Adobe sells and services software to its customers, who decide where and how it is deployed and what information it collects. *See, e.g.,* Compl. ¶¶ 73-78. There is no allegation (and no reasonable basis for an allegation) that Adobe intended to record confidential communications.[4] Plaintiffs' Section 632 claim fails for this reason as well.

### C. Plaintiffs' CIPA Section 638.50 & 638.51 Claim Fails Because the ECID Is Assigned, Not User-Generated.

Plaintiffs' fourth cause of action turns on whether Adobe's tracking technology constitutes a "trap and trace device" as defined by CIPA Section 638.50 and penalized by CIPA Section 638.51. By definition, a trap and trace device "captures identifying information ***about*** a

[4] Generalized allegations about targeted advertising and identity graphs cannot rescue the claim when not a single Plaintiff alleges Adobe sent it targeted advertising or even created an identity graph using their data.

communication '***but not the contents*** of a communication.'" *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025); Cal. Penal Code § 638.50(c).

Here, Plaintiffs allege that Adobe's tracking technology captures the "content" of their communications (Compl. ¶ 215) and that Adobe recorded Plaintiffs' "confidential" communications (*id.* ¶ 227). Plaintiffs cannot have it both ways, as trap and trace devices by definition "are tools which provide information about the 'who,' 'when,' and 'where' of communications—but not the 'what.'" *Price v. Headspace, Inc.*, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025). This Court dealt with this very same situation and found similar allegations lacking in *Kishnani*, 2025 WL 1745726, at *4, and *Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025).

Trying to escape this fatal problem, Plaintiffs appear to limit their trap and trace claim to Adobe's "ECID framework." Compl. ¶ 237. In doing so, Plaintiffs run into a different and more fundamental problem. ECID stands for ***Adobe's*** Experience Cloud Identifier. *Id.* ¶ 3. By Plaintiffs' own allegations, Adobe "creates and assigns" ECIDs. *Id.* ¶¶ 3, 19, 41, 42. A trap-and-trace device, by contrast, must ***capture or record dialing, routing, addressing, or signaling information transmitted by*** the user's instrument. Cal. Penal Code § 638.50(c). An identifier that Adobe itself generates and transmits back to the browser is not "capturing incoming impulses" or "recording signaling information." The ECID is thus the digital equivalent of a customer account number assigned by Adobe, not a tracing mechanism that captures dialing, routing, addressing, or signaling information transmitted by a user's instrument. *See United States v. Forrester*, 512 F.3d 500, 511 (9th Cir. 2008) (limiting trap-and-trace to numbers dialed or routing data actually transmitted by the user). As such, Adobe does not "capture," "record," or "trace" any signaling information originating from Plaintiffs. Instead, according to Plaintiffs' allegations, it merely receives back the same ECID it originally assigned. Compl. ¶ 42, fig. 4. Nothing in the Complaint suggests Adobe decodes IP addresses or captures connection impulses. *Cf. Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *5–6 (N.D. Cal. Oct. 9, 2025) (noting case law that trackers collecting

IP addresses and metadata may be a pen register).[5] Instead, Plaintiffs allege that Adobe ***issues*** the ECID. Because the alleged process operates in the opposite direction of a trap-and-trace device, Plaintiffs' trap and trace claim fails as a matter of law.

## III. PLAINTIFFS' PRIVACY CLAIMS FAIL UNDER BOTH COMMON LAW AND THE CALIFORNIA CONSTITUTION.

Plaintiffs' first and second claims—which allege violations of common law invasion of privacy (intrusion upon seclusion) and of Section 1 of the California Constitution—fail because Plaintiffs do not plausibly allege that Adobe intruded on their privacy. As explained above, Plaintiffs do not allege what information Adobe allegedly captured during their visits to certain websites. They do not allege that Adobe sold any of their data or disclosed their identities. They do not even allege that they received or viewed a targeted advertisement from Adobe. For these reasons, Plaintiffs do not, and cannot, plead that any intrusion was "highly offensive," or that they had a "reasonable expectation of privacy" in their information shared with Adobe. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (for invasion of privacy claims under both the California Constitution and California common law, courts consider whether "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive").

Because the analysis of common-law and constitutional invasion-of-privacy claims is "effectively identical," courts consider them together. *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal 2019); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). "The California Constitution and the common law set a high bar for an invasion of privacy claim," one Plaintiffs do not come close to meeting. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)).

---

[5] Even if Plaintiffs amended their Complaint to add these types of allegations, they would still run into the more fundamental problem that Plaintiffs' right to privacy would not be evaded by the collection of the data because they would have "no expectation of privacy as to that type of data." *Mitchener*, 2025 WL 2272413, at *17–18; *Kishnani*, 2025 WL 1745726, at *4–5 (similar); *Forrester*, 512 F.3d at 510 ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visited because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information.").

### A. Routine Web Tracking Is Not a "Highly Offensive" Invasion of Privacy.

To survive dismissal on their common law and constitutional privacy claims, Plaintiffs must plead that the invasion of privacy is "so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 286–87 (internal quotes omitted).

Plaintiffs allege that Adobe's collection of Plaintiffs' "browsing habits" was "highly offensive because it violates established social norms." Compl. ¶¶ 93, 101, 110, 122, 192. Plaintiffs, however, do not allege with any specificity what "browsing habits" Adobe supposedly collected. Putting this aside, merely collecting browsing habits does not rise to the "high bar" for invasion of privacy claims under California law. *Doe I*, 741 F. Supp. 3d at 844. Courts, including in this District, routinely dismiss invasion of privacy claims where the alleged "highly offensive" conduct involved collecting browsing habits and activity. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *Low*, 900 F. Supp. 2d at 1025; *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *7 (E.D. Cal. June 9, 2025). This is because "[d]isclosing a user's browsing history [unrelated to the provision of healthcare or patient status] does not plausibly reach the level of 'highly offensive' conduct [required] under either common law or the California Constitution." *Harrill*, 2025 WL 1635428, at *7; *see also Low*, 900 F. Supp. 2d at 1025 (finding the disclosure of unique user ID and browsing data was not highly offensive); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (finding collection and disclosure of users' browsing histories was not highly offensive); *In re iPhone*, 844 F. Supp. 2d at 1063 (finding disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms).

Here, Plaintiffs do not plead the browsing information Adobe allegedly intercepted. Instead, they list certain websites they visited whose owners had implemented Adobe's technology. *See, e.g.*, Compl. ¶¶ 99, 108, 114, 120, 127. They do not allege their actions taken

on those websites or any other information that, if used by Adobe, arises to the level of "highly offensive" conduct.

### B. Plaintiffs Do Not Plead That They Had a "Reasonable Expectation of Privacy".

To establish a "reasonable expectation of privacy," Plaintiffs must "plead [] facts to suggest that [the] data was sensitive." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024). Vague "allegations regarding . . . browsing activity" are insufficient to "sufficiently allege[] a reasonable expectation of privacy in [plaintiff's] browsing activity." *Harrill*, 2025 WL 1635428, at *6.

Again, Plaintiffs only plead vague allegations about general browsing activities without any explanation of how or why they would have a reasonable expectation of privacy in their routine browsing activities. None of Plaintiffs plead ***any*** facts to "suggest that [their] data [that was collected] was sensitive." *D'Angelo*, 726 F. Supp. 3d at 1206. In fact, Plaintiffs allege nothing to suggest that any of their data was even collected by Adobe. Plaintiffs' vague allegations that their "activities" on websites were collected is not enough. *See, e.g.*, Compl. ¶¶ 99, 108, 114, 120, 127. While some Plaintiffs vaguely allege that they "access[ed] and obtain[ed] information related to [] medical care," (*see id.* ¶ 107; *see also id.* ¶¶ 106, 125), none of the Plaintiffs "specifically allege that [their] searches related to the provision of healthcare, patient status, or otherwise included PHI." *Harrill*, 2025 WL 1635428, at *6 (dismissing invasion of privacy claims brought under common law and the California Constitution because plaintiff's allegations that she communicated with defendants on their website regarding her "medical data" were insufficient to demonstrate a "reasonable expectation of privacy in her browsing activity on the Website").

Plaintiffs also contend they suffered an invasion of privacy based on the conclusory allegation that "Adobe failed to obtain their consent." Compl. at 41. But, as described earlier, not a single Plaintiff includes ***any*** allegations about the disclosures or consent provisions on the websites they visited. Thus, Plaintiffs cannot plausibly allege that they did not consent to sharing their browsing activity with the websites they visited or Adobe. Even if they sufficiently alleged

a lack of consent, it would not suffice to state a privacy claim. *See D'Angelo*, 726 F. Supp. 3d at 1206 (noting that even if a plaintiff alleges they did not consent, such allegations, without more, "do[] not support a reasonable expectation of privacy"); *In re iPhone*, 844 F. Supp. 2d at 1063 ("Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure [of information including device identifier number, personal data, and geolocation data] does not constitute an egregious breach of social norms.").

Plaintiffs have failed to allege that: (1) Adobe's conduct was "highly offensive," and (2) they had a "reasonable expectation of privacy" in their browsing activities. For these reasons, Plaintiffs' claims under the common law and California Constitution should be dismissed.

## IV. PLAINTIFF'S CDAFA CLAIM FAILS TO SUFFICIENTLY ALLEGE DAMAGES.

The CDAFA—California's anti-hacking statute, *see, e.g.*, *People v. Gentry*, 234 Cal. App. 3d 131, 141 n.8 (1991)—"prohibits certain computer-based conduct such as '[k]knowingly and without permission access[ing] or caus[ing] to be accessed any computer, computer system, or computer network.'" *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021) (cleaned up). Under the CDAFA, a party must allege that it "suffer[ed] damage or loss by reason of a violation" of the statute. Cal. Penal Code § 502. "Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner . . . to verify that a computer . . . or data was or was not altered, damaged, or deleted by the access." *Id.* § 502(e)(1).

Adobe is a service provider, not a hacker, and there are no well-pled allegations that Adobe "hacked" or broke into any Plaintiff's computer or that Plaintiffs are unable to use their computer or device as a result of Adobe's activities. *Chrisman v. City of L.A.*, 155 Cal. App. 4th 29, 34 (2007) (noting that the CDAFA "defines 'access' in terms of redolent of 'hacking' or breaking into a computer"). But in any event, Plaintiffs do not have standing to sue under the CDAFA because they have not pled damage or loss as required under the statute. *See Cottle*, 536 F. Supp. 3d at 488 (finding no standing for CDAFA claim if unable to plead a type of loss covered by the statute); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (same).

Recognizing this, Plaintiffs allege instead that Adobe deprived them of their sensitive personal data, the ability to receive compensation for that data, and the ability to withhold that data for sale. Compl. ¶ 254. But, "CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting*, 709 F. Supp. 3d at 1021; *Cottle*, 536 F. Supp. 3d at 488 (finding that damage or loss under CDAFA does not include "loss of the right to control [plaintiffs'] own data, the loss of value of their data, and the loss of the right to protection of that data"); *Doe*, 2024 WL 3346257, at *9 (rejecting the argument that damages based on the value of personal health data that defendant intercepted using "tracking pixels" suffices under CDAFA); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025) (similar); *Doe I*, 741 F. Supp. at 846–47 (noting CDAFA is limited to compensatory damages to "verify" a computer system was not "altered, damaged, or deleted" by unlawful access and dismissing CDAFA claim); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081–82 (N.D. Cal. 2023) (similar).[6]

## V. PLAINTIFFS' UCL CLAIM FAILS BECAUSE THEY DO NOT HAVE STANDING AND FAIL TO ADEQUATELY ALLEGE UNLAWFUL OR UNFAIR CONDUCT.

### A. Plaintiffs Lack Statutory Standing To Bring a UCL Claim.

Under the UCL, a person must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Perez*, 2025 WL 3085786, at *3. This means that, for standing under the UCL, a plaintiff must suffer an injury in fact coextensive with the constitutional minimum standing ***and*** lost money or property, which demands

[6] Although there is an outlier decision (*see Brown v. Google*, 685 F. Supp. 3d 909, 939–42 (N.D. Cal. 2023)), this Court should join the "majority of courts to consider the issue" and find "CDAFA's private right of action contemplates some data to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff." *Heiting*, 709 F. Supp. 3d at 1021; Cal. Penal Code § 502(e)(1) ("Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verity that a computer system, compute network, computer program, or data was or was not altered damaged or deleted by the access."). In any event, Plaintiffs' theory of loss fails for the reasons noted in Section V.

more. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). "The 'lost money or property' requirement means plaintiff 'must demonstrate some form of economic injury such as surrendering more or acquiring less in an transaction, having a present or future property interest diminished, being deprived of money or property, or entering into a transaction costing money or property that was unnecessary.'" *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018).

Plaintiffs lack standing to bring a claim under the UCL because they do not allege ***any actual loss of money or property*** as a result of Adobe's alleged conduct. This case is entirely about the alleged capture Plaintiffs' personal information. But "[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL." *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) ("[F]ail[ure] to demonstrate how [the] privacy violation translates into a loss of money or property . . . is fatal to plaintiffs' UCL class claim."). This includes the "alleged capture" of personal data. *Gonzales*, 305 F. Supp. 3d at 1093 (the alleged interception of communications, like the "sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes").

To try to get around this point, Plaintiffs allege they suffered harm in the form of diminution of the value of private and personally identifiable data due to the unauthorized disclosure and taking of personal information, which they allege has economic value. Compl. ¶¶ 267-69. But this does nothing to save their UCL claim. *See, e.g.*, *In re Facebook Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 767, 784 (N.D. Cal 2019); *Moore v. Centrelake Med. Grp.*, 83 Cal. App. 5th 515, 538–40 (2022) ("We need not accept as true appellants' allegations that they suffered '[a]scertainble losses in the form of deprivation of the value of their PII,' as this constitutes a conclusion or deduction, unsupported by any properly pled facts."). Courts routinely dismiss UCL claims like this one where "Plaintiffs do not allege sufficient facts from which the Court may reasonably infer that [Defendant's] misappropriation reduced the value of Plaintiffs' information." *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal.

2023) (dismissing UCL claim for lack of standing after finding that "[t]he weight of the authority in the district and the state" holds that "the 'mere misappropriation of personal information' does not establish compensable damages.") (quoting *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)).

In *Moore*, for example, the court dismissed the plaintiff's UCL claim because the lost-value theory lacked critical details, including allegations that: (1) a market for the plaintiff's data existed, (2) she ever attempted or intended to participate in this market, and (3) any prospective purchaser of her personal data learned that her data was already revealed and, as a result, refused to enter into a transaction with her or insisted on less favorable terms. *Moore*, 83 Cal. App. 5th at 538. Here, Plaintiffs fail to provide the details that *Moore* requires, such as allegations that Plaintiffs "ever attempted or intended to participate" in any market for their data or that they "otherwise derive[s] economic value from [her] PII." *Moore*, 83 Cal. App. 5th at 538. Having failed to include these allegations, Plaintiffs lack standing for their UCL claim and it should be dismissed.

**B. Plaintiffs Fail To Adequately Allege Unlawful or Unfair Conduct.**

Even if Plaintiffs had statutory standing (they do not), they are still unable to state a claim under the UCL. The Complaint includes conclusory allegations that Adobe engaged in the "unfair and unlawful practice of intercepting Plaintiffs' and Class Members' personal information and private communications, which has economic value." Compl. ¶ 267. These allegations do not meet the requirements of either the "unlawful" or "unfair" prong of the UCL.

Plaintiffs cannot state a claim under the UCL for "unlawful" business acts because their "unlawful" claims—violations of CIPA, CDAFA, and the common law right of privacy, *see* Compl. ¶ 262—all fail. *See supra* at Sections I-IV; *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020) ("[T]o be 'unlawful' under the UCL, Defendants' conduct must violate another 'borrowed' law."). To state a claim for "unfair" practices, a plaintiff must "allege facts sufficient to show Defendant['s] practice is immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers." *Harmon v. Hilton Grp.*, 2011 WL 5914004, at *9 (N.D. Cal. Nov. 28, 2011). Plaintiffs fail to plead facts showing that Adobe's alleged conduct qualifies as such. In any event, because the conduct on which Plaintiffs base their claims under all prongs of the UCL is the same—purported "surreptitious collection of private communications and personal information," Compl. ¶ 264—they all must fail. *Hammerling*, 2022 WL 17365255, at *12 (dismissing unfair prong UCL claim when overlapping privacy claim is dismissed).

## VI. UNJUST ENRICHMENT AND INJUNCTIVE RELIEF ARE NOT SEPARATE CAUSES OF ACTION.

Plaintiffs' unjust enrichment and injunctive relief claims fail because California does not recognize either claim as a "separate cause of action." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 119 (N.D. Cal. 2020) (California "does not recognize a separate cause of action for unjust enrichment"); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1161 (N.D. Cal. 2020), *aff'd,* 857 F. App'x 907 (9th Cir. 2021) ("California does not recognize a standalone claim for injunctive relief."). Plaintiffs' separately-pled causes of action for unjust enrichment and injunctive relief must therefore be dismissed. *See, e.g.*, *Perez*, 2025 WL 3085786, at *4 (dismissing unjust enrichment claim); *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1028 (N.D. Cal. 2009) (dismissing claim for injunctive relief).

## CONCLUSION

For these reasons, Plaintiffs have not alleged any plausible statutory or common-law violation. The Court should accordingly dismiss the Complaint in its entirety, with prejudice.

Dated: December 11, 2025

Respectfully submitted,

/s/ Angel Tang Nakamura
Angel Tang Nakamura (SBN 205396)
Angel.Nakamura@arnoldporter.com
Kristina Iliopoulos (SBN 341548)
Kristina.Iliopoulos@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone: 213.243.4000

Facsimile: 213.243.4199

Jami Vibbert (admitted *pro hac vice*)
Jami.Vibbert@arnoldporter.com
David B. Schwartz (admitted *pro hac vice*)
David.Schwartz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Facsimile: 212.836.8689

Daniel E. Raymond (admitted *pro hac vice*)
Daniel.Raymond@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison, Street Suite 4200
Chicago, IL 60602-4321
Telephone: 312.583.2300
Facsimile: 312.583.2360

Estayvaine Bragg (SBN 341400)
Estayvaine.Bragg@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

*Attorneys for Defendant Adobe Inc.*