Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
Yuanchen Lu (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Gary M. Klinger (admitted *pro hac vice*)
William J. Edelman (SBN 285177)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
wedelman@milberg.com

Daniel R. Schwartz (admitted *pro hac vice*)
Rebecca Trickey (admitted *pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
dschwartz@dicellolevitt.com
rtrickey@dicellolevitt.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE ADOBE DATA TRACKING LITIGATION | Case No. 5:25-cv-03032-NW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ADOBE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

I. FACTUAL BACKGROUND AND INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 3

a. Adobe's Consent Argument Fails ..... 3

b. Plaintiffs' CIPA Claims Should Be Sustained ..... 5

i. Plaintiffs' CIPA § 631 Claim Should Be Sustained ..... 5

ii. Plaintiffs' CIPA § 632 Claim Should Be Sustained ..... 10

iii. Plaintiffs' CIPA § 638.51 Claim Should be Sustained ..... 13

iv. The Rule of Lenity Does Not Apply to CIPA ..... 15

IV. Plaintiffs plausibly allege their privacy claims under both common law and the California Constitution ..... 16

V. Plaintiffs state a claim under the CDAFA. ..... 19

VI. Plaintiffs' UCL Claims Are Adequately Pled ..... 23

a. Plaintiffs Have Standing Under the UCL. ..... 23

VII. Plaintiffs Have Alleged Unlawful and Unfair Conduct ..... 24

VIII. Plaintiffs' Unjust Enrichment Claim and Request for Injunctive Relief Should Not Be Dismissed. ..... 24

IX. CONCLUSION ..... 255

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2

*Beltran v. Doctors Med. Ctr. Of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) .......... 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 25

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 4, 12

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 11, 20, 22

*Busby v. Invoca, Inc.*,
No. 24-CV-05542, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025) .......... 3

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 24

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 3

*Casillas v. Six Flags Ent. Corp.*,
No. 2:25-CV-6824, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) .......... 7, 8

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025) .......... 25

*Chrisman v. City of L.A.*,
155 Cal. App. 4th 29 (2007) .......... 22

*Cottle v. Plaid, Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 20, 21

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 6

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 6, 19

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 18

*Deivaprakash v. Conde Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) .......... 15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 21

*Doe I v. Google LLC*,
No. 23-CV-02431, 2025 WL 1616720 (N.D. Cal. June 6, 2025) .......... 16

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) .......... 21

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 8, 16

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 4, 11

*Doe v. FullStory, Inc.*,
712 F. Supp. .......... 10

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 24

*Doe v. Kaiser*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 9

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 6, 10, 21

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 24

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 21

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) .......... 25

*Erhart v. Bofl Holding, Inc.*,
387 F. Supp. 3d 1046 (S.D. Cal. 2019) .......... 23

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015) ........ 13

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 15

*Gabrielli v. Motorola Mobiolity LLC*,
2025 WL 1939957 (N.D. Cal. Jul. 14, 2025) ........ 14, 19

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ........ 19

*Gershzon v. Meta Platforms, Inc.*,
No. 23-CV-00083, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ........ 13

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 7

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 3, 4

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ........ 10, 11, 12, 17

*Hammerling v. Google LLC*,
No. 21-CV-09004, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ........ 10

*Hammerling v. Google LLC,*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 19

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ........ 18

*Harrott v. Cnty. of Kings*,
25 P.3d 649 (Cal. 2001) ........ 16

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 7, 21

*Heiting v. Taro Pharma. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ........ 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 19

*In re iPhone*,
844 F. Supp. 2d ........ 18

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 21, 23

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 18

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 23, 24, 25

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ........ 13, 14

*In re Tiktok, Inc.*,
2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) ........ 24

*In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*,
490 F. Supp. 2d 1091 (D. Nev. 2007) ........ 25

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 6, 7

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ........ 9

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 9

*Jones v. Peloton Interactive, Inc.*,
No. 23-CV-1082, 2024 WL 3315989 (S.D. Cal. July 5, 2024) ........ 5

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ........ 7

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 11, 12

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ........ 12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. Jun. 24, 2025) ........ 14, 18

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th. 310 (2011) ........ 23

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 19

*Lozano v. City of L.A.*,
73 Cal. App. 5th 711 (2022) ........ 13

*M. H. v. Done Glob. Inc.*,
No. 24-CV-03040, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) ........ 5

*Mahru v. Superior Court*,
191 Cal. App. 3d 545 (1987) ........ 22

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 3

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 7

*McDonald v. Kiloo ApS*,
385 F.Supp.3d 1022 (N.D. Cal. 2019) ........ 3

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 13, 15

*Mitchener v. Curiositystream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........ 14, 18

*Moore v. Centrelake Med. Grp.*,
83 Cal. App. 5th 515 (2022) ........ 24

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 954 (N.D. Cal. 2014) ........ 20

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 4

*People v. Gentry*,
234 Cal. App. 3d 131 (1991) ........ 22

*Perez v. Romantix Online, Inc.*,
No. 25-CV-02465, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........ 4

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. Apr. 1, 2025) ........ 14

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ... 8

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ... 12

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ... passim

*Riganian*,
793 F. Supp. 3d ... 14

*Rodriguez v. Ford Motor Corp.*,
722 F. Supp. 3d 1104 (S.D. Cal. March 15, 2024) ... 9

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ... 20, 21

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ... 25

*Shipley v. Meta Platforms, Inc.*,
2025 WL 3683868 (N.D. Cal. Dec. 18, 2025) ... 25

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ... 4

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ... 11

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ... 20

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ... 9

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ... 12

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ... 8

*Turner*,
2024 WL 4933345 ... 24

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ... 15, 18

*United States v. Hertler*,
776 F.3d 680 (9th Cir. 2015) .... 15

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .... 21

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .... 9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .... 7

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) .... 2

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .... 22

**Statutes**

Cal. Bus. & Prof. Code § 17204 .... 23

Cal. Penal Code § 502(a) .... 20

Cal. Penal Code § 502(b)(1) .... 22

Cal. Penal Code § 502(c)(1), (2), (4), (6), (7), (11), and (13) .... 20

Cal. Penal Code § 631 .... 5, 7, 14

Cal. Penal Code § 631 clause (2)-(4) .... 16

Cal. Penal Code § 631(a) .... 5, 14

Cal. Penal Code § 632 .... 10, 11, 12

Cal. Penal Code § 632(a) .... 10

Cal. Penal Code § 638.50 .... 13

Cal. Penal Code § 638.51 .... 13, 14, 15

Cal. Penal Code § 638.51(b) .... 14

**Other Authorities**

2015 California Assembly Bill No. 929 .... 14

## I. FACTUAL BACKGROUND AND INTRODUCTION

Adobe asks this Court to ignore what Plaintiffs' Complaint[1] actually says. Cherry-picking some allegations, mischaracterizing others,[2] and ignoring the rest,[3] Adobe argues that the Complaint describes nothing more than "Adobe providing advertising services to . . . enterprise customers that are using the Adobe Experience Cloud products on their websites and apps." Mot. at 3. This counter-factual narrative is not a basis for dismissal at the pleading stage.

The Complaint actually describes a comprehensive surveillance system that includes, for example, an invasive non-consensual profiling scheme, in which Adobe assigns a unique identifier to each and every individual, including Plaintiffs, who navigate to a website that has the Adobe demdex cookie embedded on it. ¶¶ 6, 24, 41-46. Adobe designed the cookie so that, in addition to enabling its customers to target individual consumers across those clients' various websites, it could track each individual with a persistent and unique identifier. As Adobe explains on the very webpage it asks the Court to judicially notice, "[t]he demdex ID remains the same for this visitor because it's contained in a third-party cookie *and persists across different domains*." *See* ECF No. 83 at 3. The demdex cookie is one of many different tools that Adobe uses to track and extract information about individuals across the internet. ¶ 57. Through these tracking tools Adobe collects information about individuals at massive scale, in order to track and profile them without their knowledge or consent. ¶¶ 57-58.

The Complaint further alleges that Adobe "syncs" the information that it gets from its own identifiers with at least twelve separate third-party data brokers and advertising entities. ¶¶ 44-46. Combined with Adobe's own tracking technology, these IDs allow Adobe to create profiles of

---

[1] References to "¶ __" and "¶¶ ___" are references to the Consolidated Amended Class Action Complaint ("Complaint") (ECF No. 78). "Mot." refers to the Motion to Dismiss (ECF No. 84).

[2] For example, Defendant claims that Plaintiffs "admit" that the Adobe tracking technology is "innocuous," Mot. at 3, 4, when the Complaint alleges the opposite: Adobe falsely markets its software for "***supposedly*** innocuous" purposes, ¶ 1, when in fact Adobe leverages this software to track users across the internet (including by circumventing user choice to block third-party cookies) and combines such collected data with other PII obtained from other sources.

[3] For example, Defendant entirely ignores Plaintiffs' well-pled allegations of domain-spoofing and CNAME cloaking, as discussed below.

these individuals across websites, including "identity graph[s]"—a means of consistently identifying who is going to a given website—even if that person has no relationship to Adobe. ¶61. Plaintiffs allege, using technical diagrams from Adobe itself, that Adobe combines online and offline data with various different identifiers to generate these profiles, bragging that it is able to take supposedly anonymized data and use that data to re-identify people. ¶¶ 61-64.

Moreover, the Complaint describes the deceptive nature by which Adobe also improperly disguises its persistent "third-party cookie" as a "first-party cookie" by engaging in "domain spoofing" and "CNAME cloaking" which in turn circumvent cookie-blocking technology and other privacy-oriented technology and settings. ¶ 141. Many consumers, including Plaintiffs, ¶¶ 93, 101, 110, use privacy settings and technology precisely to withhold consent to receiving these types of tracking cookies. The cookies also conceal Adobe's existence by routing traffic through subdomain names like "demdex" or "everesttech" that mask the true endpoint of the data. ¶¶ 54-55. But Defendant entirely ignores these well-pled allegations, never once even using the terms "first-party cookie," "third-party cookie," "domain spoofing," or "CNAME" in the Motion despite allegations that such spoofing and cloaking are an independent basis for liability. Defendant's cited authorities also do not address domain spoofing or CNAME cloaking and thus any argument as to sufficiency of such allegations is now waived. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief").

Moreover, expert testing has revealed that Adobe's opt-out tool is not fully effective and would cynically require users to *accept* third-party cookies in any event. ¶¶ 142-144, 147, and Ex. A to Compl. These design decisions undermine internet users' ability to know that Adobe is tracking them and deny the ability to block that tracking even if they did somehow discover it.

Taken together, these allegations more than plausibly allege each of Plaintiffs' claims.

## II. LEGAL STANDARD

The court must deny a motion dismiss where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 556 (2007)). The Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in plaintiff's favor. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. ARGUMENT

### a. Adobe's Consent Argument Fails

As a threshold matter, consent is a defense for which Adobe, not Plaintiffs, bears the burden of proof. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (citations omitted).[4] Consent is rarely a basis for dismissal at the pleading stage because it is only effective if relevant disclosures "explicitly notify" an individual of "the particular conduct" or "substantially the same conduct" and the defendant "did not exceed the scope of that consent." *Id.* Adobe's failure to identify any policy or document that Plaintiffs allegedly consented through dooms its invocation of this defense.

As importantly, Plaintiffs repeatedly and adequately plead lack of consent. *See, e.g.*, ¶ 97 ("Without Plaintiff []'s knowledge or consent"); ¶ 106 (same); ¶ 112 (same); ¶ 118 (same); ¶ 125 (same); Header IV(D) ("Adobe Failed to Obtain their Consent"); ¶ 191 ("Plaintiffs and Class Members did not consent"). Plaintiffs also plead in detail how Adobe's technology is *secretly* embedded in websites and apps, that Adobe surreptitiously intercepts data from while hiding in the background. ¶¶ 54, 136-141, 193. Adobe does not provide any information about which websites or apps include its technology, what data it intercepts, or how it is used. ¶ 137. These facts are more than sufficient to plead that no Plaintiff could have known of or consented to Adobe tracking them across the internet or to Adobe's use of this data to profile them. Courts consistently reject consent defenses in cases with similar allegations. *See Busby v. Invoca, Inc.*, No. 24-CV-05542, 2025 WL 822664, at *1 (N.D. Cal. Mar. 14, 2025) (finding a "third party" that "eavesdropped and secretly monitored" plaintiffs' communications cannot establish consent); *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1040 (S.D. Cal. 2023) (rejecting consent

[4] Indeed, Plaintiffs need not even plead lack of consent with respect to their common law and California constitutional invasion of privacy claims, where consent is an affirmative defense. *See McDonald v. Kiloo ApS*, 385 F.Supp.3d 1022, 1036-37 (N.D. Cal. 2019).

argument where data broker secretly intercepted and collected data across apps).

And while not required, Plaintiffs also allege that they could not have opted out of Adobe's tracking as a practical matter *even if* they knew about it (which they could not), ¶¶ 126-132, and that there is no meaningful way to stop Adobe from continuing to use the data it already intercepted. *Id*. This further confirms that consent is lacking. *See Greenley,* 684 F. Supp. 3d at 1039-40 (finding even a *functional* "opt-out" mechanism "does not demonstrate consent" where plaintiffs are "unaware of [d]efendant's data collection altogether").

Adobe misstates the law in claiming that Plaintiffs have the burden to plead details of "the . . . privacy policies available on the websites they visited" and "whether they reviewed or accepted them" in order to establish the absence of consent as a "required element" of "each of [their] claims." Mot. at 6. But "consent is a defense," *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021), meaning that "[o]n a motion to dismiss, the burden of proof to show consent rests with defendants." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024). Adobe's own cases confirm this, describing consent as a "bar" or "negat[ion]" of an otherwise valid claim, not as a required element. Mot. at 6 (citing *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("[e]ffective consent" would "negate[] an intrusion upon seclusion claim" and rejecting the defendant's "consent argument" in denying summary judgment); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) ("consent bars" certain claims)).[5]

The only case Adobe substantively discusses, *Perez v. Romantix Online, Inc.*, No. 25-CV-02465, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025), does not support its position. In *Perez*, the plaintiffs alleged the defendant's privacy policy did not disclose it would share data input on its website, which was a "contention [the court concluded was] false upon review of the [actual] policy." *Id.*, at *2. Unlike in *Perez*, Plaintiffs plausibly allege that Adobe's conduct is hidden and could not be uncovered or consented to by even the most diligent consumers, and there is nothing in Plaintiffs' Complaint or properly before the Court on this Motion inconsistent with these allegations. Adobe's hypothetical that some policy, somewhere, might one day help it advance a

---

[5] Adobe states *Opperman* is a CIPA case (Mot. at 6), but it is not.

consent defense is not a basis to dismiss Plaintiffs' complaint at this stage.

**b. Plaintiffs' CIPA Claims Should Be Sustained**

**i. Plaintiffs' CIPA § 631 Claim Should Be Sustained**

CIPA Section 631(a) is violated when any person: (1) wiretaps "any telegraph or telephone wire, line, cable, or instrument;" (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication;" (3) "uses, or attempts to use . . . any information so obtained;" or (4) "aids, agrees with, employs, or conspires" to do any of the above. *See* Cal. Penal Code § 631(a). Plaintiffs allege that Adobe violated clauses (2)-(4) by intercepting their sensitive communications and interactions with website/app providers (¶¶ 57, 64-71) to create highly specific, identifiable profiles used to facilitate targeted advertising. ¶¶ 59-66, 72-89. Courts have regularly found this type of conduct sufficient to state a claim. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091-92 (N.D. Cal. 2025) (finding second clause of Section 631(a) sufficiently alleged based on similar identity profiling practice); *Jones v. Peloton Interactive, Inc.*, No. 23-CV-1082, 2024 WL 3315989, at *5 (S.D. Cal. July 5, 2024) (third clause established where the defendant "uses intercepted communications to improve . . . its proprietary machine learning software"); *M. H. v. Done Glob. Inc.*, No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (fourth clause established where defendant "transmit[s] a user's website communications to third-party companies to facilitate ad retargeting"). This case is no different.

**Content.** Adobe argues that Plaintiffs "do not allege that Adobe intercepted the contents" of communications because Adobe does not intercept any "intended message" of the communication. Mot. at 8. But the Complaint and attached expert testing conducted by Richard M. Smith, included as Exhibit A to the Complaint ("Smith Decl.") (ECF No. 77-2, ¶¶ 30-41), shows that Adobe's technology systematically and routinely intercepts individual consumers' searches, inputs, and the exact full-string URLs of webpages whenever Adobe's technology is present. This includes flight departure and destination locations, the number of credit cards an individual has, hotel booking information, including dates of travel and locations, and searches for consumer goods and medications, ¶¶ 98, 107, 113, 119, 126 (all citing Smith Decl.). These are all

"intended message[s] conveyed by the communication," the interception of which violates the law. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

Each Plaintiff visited webpages incorporating this technology and – as indisputably shown by testing – had their queries intercepted by Adobe. These allegations are not "speculation" or "conjecture," (Mot. at 9), but facts supported by actual testing replicating the specific types of web browsing that Plaintiffs historically engaged in. *See, e.g.*, ¶¶ 93-97 (explaining that Plaintiff Johnston visited CVS, Walgreens, and WebMD's website through which Adobe intercepted full-string URLs revealing her searches and queries); Smith Decl. ¶ 40 (describing how Adobe obtains full-string URLs from Walgreens revealing searches and products viewed). This far exceeds what is required by CIPA's "content" requirement. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("content" includes individual's "search[es]" because they "could divulge a user's . . . queries[] and habits on third-party websites"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("personal search queries" convey content); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076-77 (N.D. Cal. 2023) (URLs that include the person's query or search term are "content").

Adobe's argument that Plaintiffs must somehow—pre-discovery—provide even *more* specificity about the data to which only Adobe has access contradicts the law. Adobe's cases are inapposite, as they involved plaintiffs who failed to plausibly allege that they themselves ever communicated the specific kind of content that they alleged was intercepted. Mot. at 9 (citing *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing claims premised on the disclosure of "sensitive medical information" where plaintiffs failed to plausibly allege they shared that type of information on the webpage in question); *Beltran v. Doctors Med. Ctr. Of Modesto*, 2025 WL 1635467, at *5–6 (E.D. Cal. June 9, 2025) (same)). Here, by contrast, the Complaint alleges the specific browsing behavior of each Plaintiff and the specific content interceptions associated with each Plaintiff's browsing behavior. ¶¶ 90-127 (citing Smith Decl.).

Adobe's separate reliance on cases involving purely "record" information (i.e., only metadata about the communication) also miss the mark as this is not the basis for Plaintiffs' claims

here. *See* Mot. at 9 (citing *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1038 (S.D. Cal. 2024) (finding data showing plaintiff merely "engaged" with a chat feature constituted "record information"); *In re Zynga Privacy Litig.*, 750 F.3d at 1106 (involving only "identification and address information"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (plaintiffs conceded "IP addresses, locations, browser types, and operating systems" at issue were not "content"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (involving IP address, browser type, and keystrokes); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) (involving when, how long, and frequency apps are generally opened or closed); *Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023) (alleging collection of identifiers, browser and OS information, and possibly demographic information). By contrast, Plaintiffs allege Adobe captured the contents of their searches and full-string URLs revealing substantive information about goods and services on the websites they interacted with. *E.g.*, ¶¶ 98 (Marriott hotel browsing actions); 106-07 (PII and health information); 113 (travel dates and the airports plaintiff intends to visit); 119 (CITI customer ID and number of CITI credits cards plaintiff holds); 126 (potential request for a medical appointment with UCSF) (all citing Ex. A to Compl. (testing websites visited by Plaintiffs)); *see also Riganian*, 791 F. Supp. 3d at 1091-92 (sustaining Section 631 claim where the identifying information and behavioral data together constituted "intercepted content"); *Casillas v. Six Flags Ent. Corp.*, No. 2:25-CV-6824, 2025 WL 3684543, at *5 (C.D. Cal. Dec. 15, 2025) (finding "search queries" and "browsing habits" are "content"). None of the cases Adobe relies on are comparable.

**In Transit.** Whether a communication is intercepted or read "in transit" is a "fact-intensive question" that turns on "how the challenged technology and processes actually work." *See Riganian*, 791 F. Supp. 3d at 1091-92. Here, Plaintiffs allege that Adobe simultaneously captures data (¶ 68) and acts on it in real time to create its identifiable user profiles. ¶ 69. Courts have routinely held that these allegations of real-time capture satisfy § 631's "in transit" requirement. *Riganian,* 791 F. Supp. 3d at 1091-92 (finding technology that "intercept[s]" and "connect[s]" the "identifying points of data" into an "identity profile" in "real time" satisfies CIPA's in transit

requirement); *Casillas*, 2025 WL 3684543, at *8 (finding "real time" interception to learn "browsing activities and private communications" satisfies in transit requirement) (citing cases). Indeed, Adobe *itself* describes its technology in terms of providing "***Real-Time*** Customer Profiles" (¶¶ 72-75 (emphasis added)) confirming the interception of Plaintiffs' communications.

The cases Adobe cites do not help it. Three of the cases it relies on failed to allege how the technology worked or that it occurred simultaneously. *See* Mot. at 10-11 (citing *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing claim because "real time" theory was not "explicitly allege[d]"); *Heiting v. Taro Pharma. USA, Inc.*, 728 F. Supp. 3d 1112, 1116 (C.D. Cal. 2024) (dismissing claim for lack of allegations on how "the software code . . . works" and "merely restat[ing] the statutory language[.]"); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (dismissing claim where plaintiffs alleged "information is sent" to defendant first and that the defendant "later . . . aggregates and organizes" it)). Meanwhile, *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) was a summary judgment decision that dismissed CIPA claims because the "record" confirmed that only limited "superuser[s]" could "access" the communications, and then only post-transmission. And *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025), which was also a summary judgment decision, dismissed the claims under the rule of lenity which, as discussed further *infra*, does not apply.[6] *See* § III.b.(iv), below.

Adobe's final argument that Plaintiffs must affirmatively allege they personally received specific "targeted advertis[ements] from Adobe," (Mot. at 10) is wrong. Additional secondary consequences of the unlawful wiretapping is not required to make the wiretapping actionable; Adobe is liable for intercepting Plaintiffs and other Class Members' communications regardless of whether Plaintiffs ever received an ad because of it.

**Party Exception.** Adobe's argument that it is immune from § 631 liability because it is a party to the communication (Mot. at 11) has been explicitly rejected by the Ninth Circuit. *See*

[6] Adobe's repeat argument that Plaintiffs fail to allege Adobe intercepted or read their specific communications (Mot. at 10) is inconsistent with Plaintiffs' allegations. *See* Section III(b)(i).

*Facebook Internet Tracking*, 956 F.3d at 607 (holding that "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception"), *cert denied*, 141 S. Ct. 1684 (2021). Facebook cannot be a party to a communication it unlawfully intercepted, and neither can Adobe.

Adobe is not a mere "[e]xtension" of individual websites or a "tape recorder" (Mot. at 11)—it independently and unilaterally processes and uses this for its *own* benefit, including training machine learning models and facilitating targeted advertisements for profit. Plaintiffs are aware of no case that has found an entity like Adobe that independently monetizes and profits from the data that it intercepts to be a mere "vendor." *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900-01 (N.D. Cal. 2023) (entity is not a mere "auditor" if it had "the *capability* to use" the data for other purposes) (emphasis in original); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 941-42 (N.D. Cal. 2024) (party exception did not apply where "Plaintiff sufficiently allege[d] that [the third-party] collected Plaintiff's information to monetize and market [their] services to [the website at issue] and other merchants within [the third-party's] network") (internal quotation marks omitted); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1355 (S.D. Cal. 2024) (finding party exception does not apply because creating "unique browser profiles" and using them to advertise "extends beyond the function of a tape recorder").

The two cases Adobe cites highlight this distinction, as plaintiffs there did not allege any conduct beyond providing a service to a website. *See* Mot. at 11-12 (citing *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (defendant did nothing more than "store" the data to provide a "clerical function" for a specific client); *Rodriguez v. Ford Motor Corp.*, 722 F. Supp. 3d 1104, 1121-22 (S.D. Cal. March 15, 2024) (company merely provided a chat function on a website through its API).[7] As alleged here, Adobe does far more including, e.g., syncing the information that it gets from its own identifiers with at least twelve separate third-party data brokers and advertising entities. ¶¶ 44-46.

---

[7] *Doe v. Kaiser*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024), which Adobe also cites, did not rule on vendor liability and merely noted that an entity is not a vendor if they can, like here, use the data for their own "benefit." *Id.* at *17-18

**Extraterritoriality.** Adobe's extraterritoriality argument must be rejected because Plaintiffs allege that: (1) Adobe is headquartered in California, where it "effectuated the interception" and "where it processed, compiled, and made use" of Plaintiffs' data; (2) its executives and employees responsible for its Tracking Technology are based in California; and (3) its decisions "to create, market, and deploy Adobe's tracking technology on its corporate customers' websites occurred in California." ¶¶ 179-184, 212. Courts have found similar allegations sufficient. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1080 (finding allegations that defendants are "headquartered in California" and "designed and effectuated [their] scheme to track the patient communications at issue here from California" sufficient to meet this requirement); *Doe v. FullStory, Inc.*, 712 F. Supp. at 1260 (similar). In *Hammerling,* cited by Adobe, the plaintiffs *argued* that the "data at issue is 'collected, stored, and used' in California" but that "allegation [was] nowhere to be found in the amended complaint." *Hammerling v. Google LLC* , No. 21-CV-09004, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022). Here, Plaintiffs allege the data at issue are collected, stored, and used in California. *See*, *e.g.*, ¶¶ [179-184].

**CIPA § 631(a)(3)-(4).** Adobe makes no substantive challenge to Plaintiffs' claims under third and fourth clauses of § 631(a) other than asserting that Plaintiffs did not establish the predicate claim under the second clause. Mot. at 7 n.2. Because Plaintiffs have sufficient alleged their claim under the second clause, this argument is completely without merit.

### ii. Plaintiffs' CIPA § 632 Claim Should Be Sustained

CIPA Section 632 prohibits any person from "intentionally" and "without the consent of all parties" using a "recording device" to "eavesdrop" or "record [a] confidential communication." Cal. Penal Code § 632(a). Allegations that an entity uses tracking technology to intercept and use identifying information and private browsing data meet these requirements. *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 973 (C.D. Cal. 2023) (sustaining § 632 claim premised on similar technology to create user profiles).

**Use of Device.** Adobe's contention that its customers, and not Adobe, "use" its tracking technology ignores that it is *Adobe* who creates and provides the technology to its customers,

performs the actual interception, profiles individual consumers, and ultimately benefits from this conduct. Mot. at 13-14. Not surprisingly, Adobe cites no authority to support its customers-perform-the-recording theory, because this argument has already been rejected. *See, e.g., Doe v. FullStory, Inc.*, 712 F. Supp. 3d at 1260 (rejecting argument that it is not TikTok who "used" its tracking technology because it is "TikTok [that] designed and provided its Pixel to sites . . . in order to intercept the information that . . . TikTok received.").

**Confidential Communications.** Adobe's claim that internet communications cannot be confidential because it is "absurd" for consumers "to believe" that their internet communications would be private, Mot. at 14, is inconsistent with Ninth Circuit law. *See Facebook Internet Tracking*, 956 F.3d at 603-04 (plaintiffs adequately alleged a reasonable expectation of privacy where defendant acquired an "'enormous amount of individualized data' through its use of cookies on the countless websites that incorporate Facebook plug-ins" without users' knowledge) (quotations omitted). Adobe concedes that communications are confidential *whenever* consumers have an objectively reasonable expectation of privacy. *Id*. This includes the expectation not to have identifiable data collected from thousands of websites to be profiled by an unknown third party. *See Griffith*, 697 F. Supp. 3d at 973 (sustaining § 632 claim based on similar technology that collects individuals' identifying information and behavioral data to create user profiles); *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 1085169, at *1, *3, *5 (N.D. Cal. Apr. 4, 2025) (finding communications confidential which involved "personally identifiable browsing history" and purchase history that is compiled into "detailed profiles of all Plaintiffs' online activity"); *cf. Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (compiling data through surreptitious tracking across internet and offline "contravenes the reasonable expectation of privacy," but not holding that such compilation must include offline tracking to contravene that expectation). The fact that this occurs online is irrelevant.

While Adobe argues that there is a "presumption" that all internet communications are not confidential, several courts have rejected this argument. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that

internet communications are not confidential under Section 632"); *Griffith*, 697 F. Supp. 3d at 971-72 (recognizing same). But even if there were a presumption, such a presumption would be rebutted because of the subversive nature of Adobe's conduct, which continues to track Plaintiffs and Class Members even when they utilized privacy-preserving mechanisms, like private browsing mode and cookies blockers. ¶¶ 24. 56; *see Brown*, 525 F. Supp. 3d at 1073-74 (finding "browsing communications" confidential when utilizing "private browsing mode").[8] And because Adobe's tracking technology is persistent, it intercepts swaths of sensitive and private data, including, *e.g.,* private banking (¶¶ 32, 111, 117-19) travel (¶¶ 111, 113), and health data (¶ 125) that is obviously protected.[9] *See generally Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023).

Adobe's reliance on cases involving the interception of mouse movements from a singular shopping website (Mot. at 15, citing *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019), chat transcripts with a Home Depot customer service agent (*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023)), and "vague[]" data from the Hard Rock Hotel website (*King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025))) is misplaced, as these single-website cases bear no resemblance to Adobe's profiling of individuals using web browsing across multiple websites. Its reliance on *Greenley v. Kochava, Inc.*, 684. F. Supp. 3d 1024, 1053 (S.D. Cal. 2023) also fails, both because the *Greenley* court applied the non-existent presumption of confidentiality and because there was no "additional" reason why the *Greenley* plaintiffs would expect their information would not be shared, unlike here, where Adobe circumvents individual's attempts to opt out of cookies, and unlike *Brown*.

**Intent.** Plaintiffs sufficiently plead that Adobe acted with intent because it specifically designed its tracking technology to intercept data from thousands of websites while circumventing

[8] Each Plaintiff alleges opting out of cookies as a matter of course. ¶¶ 93, 101, 110, 116, 122.

[9] Indeed, Judge Cousins, in considering Plaintiff Chwe's motion to seal, held that "because specific personal identifying information can be found in this website code" such code was sufficiently private as to warrant redaction, despite the "strong presumption of [public] access to judicial records." *Chwe v. Adobe*, Case No. 25-cv-03911, ECF No. 13 (N.D. Cal. May 5, 2025).

privacy protections for the express purpose of profiling individuals and monetizing their data. ¶¶ 23-26; *see also Gershzon v. Meta Platforms, Inc.*, No. 23-CV-00083, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023) (finding intent where "Meta designed the Meta Pixel" to intercept private communications and that "Meta is aware that this information is being transmitted").

Adobe's argument that intent is lacking because it is a mere "service provider" recycles the same vendor argument (Mot. at 15) that fails for the reasons described in Section III(b)(i). Adobe's attempts to draw similarities between its conduct and the unsuspecting device vendor in *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.,* 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) also fails. The vendor in that case sold and installed a recording device that was ultimately used by a police department for unlawful surveillance. *Id.* Adobe is not a seller disconnected from how its product is used. The technology was designed and is used by Adobe to build profiles on millions of internet users for Adobe's advertising-business benefit. ¶ 7. Nor is this case anything like *Lozano v. City of L.A.*, 73 Cal. App. 5th 711, 728 (2022), cited by Adobe, where intent was found lacking solely because "critical" evidence of who "activated" the recording system was missing. Not so here: *Adobe* used and recorded the confidential communications.[10]

**iii. Plaintiffs' CIPA § 638.51 Claim Should be Sustained**

CIPA Section 638.51 states that a person "may not install or use a pen register or a trap and trace device without first obtaining a court order." *See* Cal. Penal Code § 638.51. Consistent with CIPA's statutory definitions (Cal. Penal Code § 638.50), several courts have recognized modern technology that records identifying information are pen registers or trap and trace devices. *See Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (finding software that intercepts individuals' IP addresses are pen registers); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025) (holding Meta Pixel, which operates similarly to Adobe's technology, constitutes a pen register); *Riganian*, 791 F. Supp. 3d, at 1092-94 (finding JavaScript code that tracks individuals' name, email, phone number may

[10] Adobe's argument that Plaintiffs did not specifically allege it acted intentionally in the section of the Complaint setting forth the § 632 claim ignores Plaintiffs' express "incorporat[ion] [of] the preceding allegations," including allegations Adobe acted intentionally. *E.g.*, ¶¶ 23-26, 209.

constitute a pen register). Like these cases, Plaintiffs here allege that Adobe's Tracking Technology intercepts their ECID, IP address, email address, and device identifiers. ¶¶ 57, 64-71. This is sufficient to state a Section 638.51 claim.

Adobe claims that it cannot be held liable because it intercepts *both* identifying information (under CIPA § 638.51) and contents (under CIPA § 631). Mot. at 17. But violating both provisions is not a way out of CIPA liability. *See Meta Pixel Tax Filing*, 2025 WL 2243615, at *5 (rejecting the same "loophole" argument as "troubling" given it would permit "unauthorized pen register" and noting courts have "unsurprising[ly]" permitted both claims at the same time); *see also Riganian*, 793 F. Supp. 3d at 1092-94(allowing Section 631(a) and Section 638.51 claims to proceed concurrently); *Gabrielli v. Motorola Mobiolity LLC*, 2025 WL 1939957, at *11-12 (N.D. Cal. Jul. 14, 2025) (same). This rule makes sense, as the legislature clearly did not intend to create an exception to use pen registers *so long as* content is also intercepted. *See Meta Pixel Tax Filing*, 793 F. Supp. 3d, at 1154-55. Indeed, the legislature would not have crafted a list of enumerated exceptions if intercepting content avoided liability. *See* § 638.51(b) (listing exceptions). The legislative history further confirms this, suggesting that CIPA § 638.51's use of the phrase "but not the contents" was only intended to make clear that a court order under its purview does *not* include the *right* to intercept "content[s]" because that type of conduct requires a "much higher standard of scrutiny" and "higher standard of probable cause." *See* 2015 California Assembly Bill No. 929, California 2015-2016 Regular Session. In other words, the legislature did not intend to convey immunity to a defendant who is intercepting *both* addressing information and content.

While Adobe cites one state court case to hold otherwise (*Price v. Headspace, Inc.*, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025)), and two decisions by this Court that have followed that holding (*Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. Jun. 24, 2025) and *Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025)), these decisions, respectfully, do not appreciate the escape-valve such an exception creates for conduct *worse* than what their own holdings say the statute prohibits.

Adobe's separate argument that it cannot be held liable because it is the creator of ECID

fails. Nothing in CIPA § 638.52 or cases interpreting this provision limits routing, addressing, and signaling information to those that are generated by other entities. Adobe cites *United States v. Forrester*, but that is not a CIPA case and irrelevantly held that "the government's surveillance of e-mail addresses" is similar to the use of a pen register for Fourth Amendment considerations. 512 F.3d 500, 511 (9th Cir. 2008). Because ECID is a unique identifier that serves the same purpose as any other "addressing" and "signaling" information, it falls within § 638.52. *See Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1105 (N.D. Cal. 2025) ("cookies" that "uniquely identify" users, which are not user-generated, satisfy § 638.51's requirement).

In any event, Plaintiffs allege Adobe collects a host of other routing, addressing, and signaling information beyond ECID, including user and device identifiers, cookies, IP addresses, and the Adobe Org ID. *See Mirmalek*, 2024 WL 5102709, at *3 (IP address is "addressing information") (citation omitted); *Riganian*, 791 F. Supp. 3d at 1092 ("IP addresses" and "device identification numbers" constitute addressing or signaling information). Adobe tacitly concedes that the collection of this data may create liability under § 638.51. *See* Mot. at 17 (citing *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *5–6 (N.D. Cal. Oct. 9, 2025) (recognizing "IP address and device identifiers" are "quintessential 'addressing' information")).

Further, Adobe's footnote argument that Section 638.51 liability turns on a "reasonable expectation of privacy" (Mot. at 18 n.5) misstates the law. That element of common law privacy claims and CIPA Section 632 liability is not an element of a Section 638.51 claim.

#### iv. The Rule of Lenity Does Not Apply to CIPA

Adobe's invocation of the rule of lenity (Mot. at 6-7) is inconsistent with a large body of authority applying CIPA to cases like this one. The rule of lenity applies only if "after seizing everything from which aid can be derived, [the court] can make no more than a guess" as to what the legislature intended. *See United States v. Hertler*, 776 F.3d 680, 686 (9th Cir. 2015) (citation omitted). As discussed in Sections III(b)(i)-(iii) above, courts have no issue applying CIPA or understanding its contours per the legislature's directive, and the rule of lenity therefore has no application here. *See Riganian*, 791 F. Supp. 3d at 1094 (finding there is "no role for [the rule of

lenity]" because CIPA's "express language" contains no "egregious ambiguity and uncertainty").

Without citing any purported ambiguity in CIPA, Adobe rests its lenity argument on two cases: (1) one outlier decision on summary judgment *Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *6 (Chabria, J.)); and (2) a case involving assault weapons and no application to CIPA. *See* Mot. at 7 (citing *Harrott v. Cnty. of Kings*, 25 P.3d 649 (Cal. 2001)). *Harrott* has no relevance here, and *Eating Recovery Center* is plainly inconsistent with ample case law (including Judge Chabria's own prior decisions)[11] over the past decade that have applied CIPA's clear statutory language to "modern web technology" like Adobe's technology here. Sections III(b)(i)-(iii).

Even putting aside how atypical the decision in *Eating Recovery Center* is, its reasoning—that the rule of lenity means "something more" than the interception a communication with the immediate purpose to "learn" or "read" its contents it required to prevail under CIPA § 631 clause (2)-(4)—would eviscerate the application of these subsections in *any context*, not just online. That is because even in the most traditional examples of a wiretap (i.e., alligator clips on a phone line), the wiretapper cannot "learn" or "read" the contents until they are actually captured (i.e., turned from electrical impulses into sound that is heard by their ears). Because the rule of lenity cannot be invoked in a manner that would fully nullify a statute passed by the legislature, this decision is not just an outlier but incompatible with the law.

## IV. Plaintiffs plausibly allege their privacy claims under both common law and the California Constitution.

Claims for common law invasion of privacy and the California constitution involve "similar elements." *Facebook Internet Tracking*, 956 F.3d at 601. Plaintiffs must show that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive*.*" *Id*. This analysis is holistic, with courts considering the nature of the data, the breadth of the collection, and whether and how the defendant gained access to it. *Id* at 602-03.

[11] *See Doe I v. Google LLC*, No. 23-CV-02431, 2025 WL 1616720, at *3 (N.D. Cal. June 6, 2025) (Chhabria, J.) (sustaining CIPA claims based on Google's interception of internet communications).

Here, Plaintiffs allege that Adobe's technology is secretly embedded in the background of third-party websites and intercepts Plaintiffs' Class Members' identifiable searches, queries, and private behaviors. This includes full-sting URLs reflecting medical care and health information from sites like CVS, Walgreens, and WebMD, used by individuals like Plaintiff Johnston (¶¶ 106–107), appointments with actual healthcare providers, like UCSF, used by Plaintiff Concepcion (¶¶ 125–126), financial account membership details, from sites like Citi (¶ 119), and travel plans, from sites like Delta. ¶ 113. All of this data is linked to persistent identifiers and used by Adobe to build profiles tied to specific individuals. ¶¶ 2–7, 39–45. Worse, Adobe designed this technology to circumvent privacy protections, including browsers that block third-party cookies and "do not track" settings, and does not allow consumers to truly "opt out" or limit its collection, which each Plaintiff does as a matter of course. *See* Section III(b)(ii); ¶¶ 5, 29, 93, 101, 110, 116, 122, 169

Such tracking violates reasonable expectations of privacy and is highly offensive, given it involves the most intimate details of a person's life, including health and financial data across thousands of websites. *See Facebook Internet Tracking*, 956 F.3d at 601-04 (sustaining intrusion upon seclusion claims where defendant intercepted browsing activity to "compile[] highly personalized profiles from sensitive browsing histories and habits"); *Riganian*, 791 F. Supp. 3d at 1085-89 (holding a company that "generate[s] uniquely identifying profiles" from users' internet activity alleges an intrusion upon seclusion); *Griffith*, 697 F. Supp. 3d at 970-72 (C.D. Cal. 2023) (recognizing same). At the very least, it is *plausible* that such activities are "highly offensive," which is all that is required at the pleading stage. Adobe's arguments to the contrary lack merit.

**Expectation of Privacy.** Adobe's argument that Plaintiffs plead only "vague allegations" and no "facts" (Mot. at 20) about the data Adobe collected from them cannot be reconciled with Plaintiffs' actual allegations, which are supported by expert testing, and include the fundamental allegation that Adobe is engaging in surreptitious tracking *across* the web, not merely within single websites. ¶¶ 58-64. Building off its misreading of the Complaint, Mot. at 20, Adobe cites a series of inapposite cases involving single-website activities and totally unrelated to the secret cross-web tracking actually alleged. *See, e.g.,* Mot. at 20 (citing *Harrill v. Emanuel Med. Ctr.*, 2025 WL

1635428, at *6-7 (E.D. Cal. June 9, 2025) (a pixel case involving a single medical website, in which the court granted plaintiff leave to amend to "better describe the health information provided to the defendants" and stated that this amendment would allow the claims to proceed).

Adobe's separate contention—that Plaintiffs have no "reasonable expectation of privacy" in their "browsing activity" at all—is simply wrong, Mot at. 20, and fully foreclosed by *Facebook Internet Tracking*, 956 F.3d at 602-04, as discussed above; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) ("Case law also supports plaintiffs' position that individuals maintain a reasonable expectation of privacy in detailed URLs.").

Adobe's cases do not help it. Unlike here, and in *Facebook Internet Tracking*, each of these cases involved much more limited data from singular websites. Defendants rest much of their argument (Mot. at 20-21) on their citation to *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024), but the case has no relevance here. First, the privacy invasion at issue there was solely based on the transmission of chat data in a single website to a third party. In other words, it did not concern broad-based tracking and profiling at issue here. *Id.* at 1187-88. Second, in *D'Angelo*, "[p]laintiffs fail[ed] to plead any facts to suggest that th[e] data was sensitive." *Id.* at 1206. By contrast, each named plaintiff here describes Adobe's actual collection of highly sensitive data including, but not limited to, sensitive healthcare information. *See* Section I.

The other cases Adobe cites are similarly inapposite. *See* Mot. at 20 citing *Mitchener*, 2025 WL 2272413, at *5 (involving IP addresses, geographic information, and URL tracking); *Kishnani*, 2025 WL 1745726, at *4–5 (involving solely IP addresses from a single website); *Forrester*, 512 F.3d at 513 (involving police surveillance of IP addresses and to/from field); *In re iPhone*, 844 F. Supp. 2d at 1063 (involving "unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices"). Nothing in these cases supports Adobe's position that its wide-scale interception of identifiable (and private) data from millions of consumers across the internet is not privacy-invasive.[12]

---

[12] Adobe's repeat argument that Plaintiffs must show a *lack of* consent (Mot. at 20) fails for the reasons described in Section III.A.

**Highly Offensive.** Adobe's claim that its conduct is not highly offensive again ignores the Ninth Circuit's binding decision in *Facebook Tracking*, which found allegations similar to those here sufficient to proceed past the pleadings. *See Facebook Internet Tracking*, 956 F.3d at 601; *see also Gabrielli*, 2025 WL 1939957, at *10 (refusing to conclude as a matter of law that the collection of IP addresses and browsing history is not highly offensive); *Riganian*, 791 F. Supp. 3d at 1088-89 (refusing to conclude as a matter of law that the "creat[ion] persistent identifiers linked to comprehensive behavioral profiles" is not highly offensive); *Cousin*, 702 F. Supp. 3d at 973-74 (evaluating whether collection of health data and user identifiers was sufficiently offensive to is inappropriate at the motion to dismiss stage); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *7-8 (C.D. Cal. Mar. 2, 2025) (same).

Adobe's self-serving description of its misconduct as "routine" (Mot. at 19) does not make it so. Nor does its citation to cases unrelated to the cross-website profiling alleged here. For instance, the decade-old decisions Adobe relies on, one involving LinkedIn's disclosure of LinkedIn profile IDs and URLs from its *own* web property (*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024-25 (N.D. Cal. 2012)) and another involving Google's commingling of data from its *own* services (*In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014)), Mot. at 19, are nothing like the allegations here that Adobe secretly collects data from *third-party websites* that it compiles into comprehensive profiles. Meanwhile, its citation to *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1090-91 (N.D. Cal. 2022) actually *supports* Plaintiffs' position here, given that the court (1) expressly recognized that certain types of data, like health information, are "extremely intimate" and (2) acknowledged that conduct may be highly offensive when, like here, it "overrode users' cookie blockers." While plaintiffs in *Hammerling* failed to plausibly allege either—staking their case on the collection of data revealing solely how long apps are opened or closed—Plaintiffs here allege both.

### V. Plaintiffs state a claim under the CDAFA.

CDAFA is a comprehensive statute designed to prevent "tampering, interference, damage, and unauthorized access" to "computer data and computer systems" (Cal. Penal Code § 502(a))

like Adobe's conduct here. Across Plaintiffs' CDAFA claims, Adobe challenges only (1) standing; and (2) "access" as used in § 502(c)(1), (2), (4), (6), (7), (11), and (13).

**Standing.** CDAFA does not define "damage" or "loss," nor does it set a monetary threshold for what constitutes a loss. *See Cottle v. Plaid, Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021). Courts in the Northern District of California have held that plaintiffs fundamentally have "a stake in the value of their misappropriated data," *Brown*, 685 F.Supp.3d at 940, and, thus, have CDAFA standing whenever an entity obtains "unjust profits" from misappropriated data. *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) (finding that a "disgorgement theory" can satisfy CDAFA standing); *see also Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109-10 (N.D. Cal. 2025) (finding same); *Facebook Internet Tracking*, 956 F.3d at 600 (under California law an individual has a "stake in unjustly earned profits []regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable"). Here, Plaintiffs allege that Adobe unjustly profited from the wrongfully obtained data by creating identifiable user profiles, which it sells access to through its lucrative ad products. ¶¶ 30-34, 142-157. Accordingly, Plaintiffs have CDAFA standing.

While Adobe attempts to dispose of *Brown* by mischaracterizing it as an "outlier decision." (Mot. at 22 n.6), the cases (above) show that it is not. Consistent with *Brown*, the misappropriation of data is properly considered a loss under the CDAFA's more flexible standard (as compared to the CFAA) and in keeping with the ever-changing nature of technology and the novel ways that it can be used harm or cause damage to individuals. *See NovelPoster v. Javitch Canfield Group*,140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (contrasting the parallel federal statute, the CFAA, where the lack of monetary floor for damage means that "*any amount* of damage or loss caused by the defendant's CDAFA violation is enough to sustain the plaintiff's claims") (emphasis added).

In any event, nearly all of cases Adobe relies on—which it claims without support is the "majority" position (Mot. at 22 n.6)—do not address the "unjust profit" as described above, but a different theory that data itself is inherently valuable, such that the mere act of taking it *diminishes* its value, or that the "loss of control" over such data itself is a harm. Mot. at 21-22 (citing *Cottle*,

536 F. Supp. 3d at 488 (alleging loss of control and lost value theory); *Doe v. Meta Platforms, Inc.*, 690 F. Supp.3d at 1082 (same); *Doe v. County of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (rejecting lost value theory); *Heiting*, 709 F. Supp. 3d at 1021 (only harm alleged was "loss of some of her data"). Adobe cites *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025), but it does not support dismissal as the decision noted courts are split on this issue, coming out the other way particularly when the case involves only "medical information" or "PHI" (something consumers are unlikely to monetize themselves) rather than full "browsing histor[ies]" like in *Brown*. *Id.* at 845 (citing *Doe v. County of Santa Clara*, 2024 WL 3346257, at *9 n.7 (distinguishing *Brown* on these grounds).

Putting aside the damages incurred by the misappropriation of their data for profit, Plaintiffs separately have standing under CDAFA because Adobe's actions cause the self-propagation of unwanted identifiers and cookies in their local storage, and take up device and computing resources. ¶¶ 158-164; *see also Rodriguez*, 772 F. Supp. 3d at 1110 (holding "even small harms" like "depletion" of "bandwidth" establish CDAFA standing and do not require alleging a precise degree of impact); *Williams v. Facebook, Inc.,* 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019) (finding "depletion of device resources" establishes CDAFA standing); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 656 (N.D. Cal. 2024) (occupying "storage space" and resources and causing devices to "work slower" sufficient for CDAFA standing).

Adobe does not expressly address this theory of damage (¶ 254) and the sole case it cites that does—*Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846-47 (N.D. Cal. 2024)—did not reject it but merely found that the plaintiff's allegations in that case were too "conclusory." The same cannot be said here. ¶¶ 158-164.

**Access**. Plaintiffs allege that Adobe "accessed" Plaintiffs' devices. The statute explains that access means "means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1). Plaintiffs allege that Adobe embeds its cookies and other tracking technology on numerous websites (¶¶ 8, 34-35,

57) and uses those to write code onto the local storage of Plaintiffs' devices. ¶ 164. Plaintiffs also allege that Adobe uses those cookies to cause the transmission of information about Plaintiffs to Adobe in real time for profiling. ¶¶ 68, 97-98, 106-107, 118-119, 125-126, 130-131. In this way, Adobe "accessed" Plaintiffs' computer, since it "gained entry" (through cookies and other tracking tools) and otherwise caused the instruction of Plaintiffs' computers (using cookies to transmit data). *See¸ e.g.*, *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 899-900 (S.D. Cal. 2025) (finding that plaintiff had sufficiently pled access when defendant had deployed tracking technologies, including cookies, that interfaced with her device ); *Brown*, 685 F. Supp. 3d at 939-40 (finding that plaintiffs sufficiently pled access when websites running defendants technology instructed plaintiffs' browsers to direct information to defendant).

Unable to dispute that such access took place, Adobe argues instead that Plaintiffs did not allege "access" because they did not allege that Adobe "broke into any Plaintiff's computer or that Plaintiffs are unable to use their computer or device as a result of Adobe's activities." Mot. at 21. This is not a CDAFA requirement. Plaintiffs do not need to show their devices have been rendered unusable or were "hacked"—a word appearing nowhere in the statute—in order to state a claim. Even the authority cited by Adobe, *Chrisman v. City of L.A.*, 155 Cal. App. 4th 29, 34 (2007) (quoting *People v. Gentry*, 234 Cal. App. 3d 131, 141 n. 8 (1991) (emphasis added)), describes anti-hacking as "*[o]ne* of the legislative purposes of" CDAFA—not the only purpose. *See also Mahru v. Superior Court*, 191 Cal. App. 3d 545, 549 (1987) (conceding that "we cannot be confident that this brief declaration of purpose [about hackers] was intended to summarize every act covered by the statute.")); *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1057 (S.D. Cal. 2019) ("[S]ection 502 does not require that [defendant] "hack" into [plaintiff's] computer system or overcome code-based barriers for him to be potentially liable for the unauthorized taking or destruction of [plaintiff's] data.").

**Other Valid Bases.** Adobe violated CDAFA even if its "access" argument is credited. CDAFA prohibits not *just* "access" but also "altering" or "using" data or deploying a "computer contaminant," which Plaintiffs allege here. *See, e.g.*, ¶¶ 37, 39, 41, 44-45, 57, 60-66, 73-78, 83-

85; *see also In re Meta Healthcare Pixel Litig.,* 713 F. Supp. 3d 650, 656 (N.D. Cal. 2024) (finding allegations that tracking technology places "cookie[s]" on their "devices" and "redirect[s]" data to defendant's own servers sufficient to allege defendant "altered" their "data or devices").

**VI. Plaintiffs' UCL Claims Are Adequately Pled**

**a. Plaintiffs Have Standing Under the UCL.**

To establish UCL standing, a plaintiff must have "suffered injury in fact and … lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The Supreme Court of California has explained that "there are innumerable ways in which economic injury from unfair competition may be shown," including to "surrender in a transaction more, or acquire in a transaction less, than [a plaintiff] otherwise would have." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th. 310, 323 (2011). Thus, UCL standing can be based on: (1) deprivation of the benefit of the bargain; (2) diminished value of data; or (3) loss of privacy, i.e., infringement on the "right to exclude." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1023–25 (N.D. Cal. 2024) ("Meta Pixel").

Here, Plaintiffs allege the "loss of money and/or property" in each of those three different forms: (i) "diminution in the value of their personal information," ¶ 268; (ii) "damage to and loss of Plaintiffs' and Class Members' property right to control the dissemination and use of their personal information and private communications," ¶ 269, and (iii) unjust enrichment to Adobe, which "reaped unjust profits and revenues" at Plaintiffs' expense, ¶ 270. These are three separate bases for UCL standing alleged in the Complaint.

Critically, Adobe's motion fails to address the invasion of privacy and unjust enrichment bases for UCL standing, (Mot. at 23.), each of which is sufficient to confer UCL standing. *See In re Tiktok, Inc.*, 2025 WL 3628598, at *21 (C.D. Cal. Nov. 5, 2025) ("The Court agrees with the growing number of courts that there may be a property interest in at least some of the personal information Defendants allegedly collected from Plaintiffs here" and "Plaintiffs have also alleged sufficient facts from which the Court may infer a deprivation of their right to exclude"); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *12 (N.D. Cal. July 22, 2025) ("Plaintiffs meet the

UCL's statutory standing requirement because they allege that the [] Defendants took their data without compensating them for it and that the data has value to both companies and consumers.").

Regardless, while courts are divided on whether diminution in value of personal information is a cognizable UCL injury (*see Turner*, 2024 WL 4933345, at *6 (describing the split and citing cases)) the better-reasoned cases, including those citing *Moore v. Centrelake Med. Grp.*, 83 Cal. App. 5th 515, 538–40 (2022)—which Adobe principally relies on—find these types of harms are cognizable given the real-world market for this data. *See, e.g.*, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021); *Meta Pixel*, 724 F. Supp. 3d at 1023–25 (citing *Moore*); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023). This Court should take the same approach here, especially in light of Plaintiffs' allegations that Adobe sells the data.

## VII. Plaintiffs Have Alleged Unlawful and Unfair Conduct

Adobe briefly argues that Plaintiffs have failed to adequately allege a claim under the "unlawful" and "unfair" UCL prongs because Plaintiffs must adequately plead the underlying claims. In Adobe's view, Plaintiffs failed to do so for the reasons raised in the other sections of its motion. (Mot. at 24-25.) Plaintiffs have adequately pled CIPA, CDAFA, invasion of privacy (common law and constitutional), and unjust enrichment claims, so Adobe's argument fails. *Meta Pixel*, 724 F. Supp. 3d at 1025 (UCL claim adequately pled under "unfair" and "unlawful" prongs where other privacy claims adequately pled). In addition, Plaintiffs have stated a claim under the UCL's "unfair" prong regardless of the adequacy of other claims because Plaintiffs have alleged surreptitious collection of private communications and information that violates the spirit of the underlying constitutional and statutory privacy protections. ¶¶ 262-266; *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 886 (N.D. Cal. 2025) (UCL "unfair prong" satisfied where plaintiffs allege conduct "tethered to any underlying constitutional, statutory or regulatory provision").

## VIII. Plaintiffs' Unjust Enrichment Claim and Request for Injunctive Relief Should Not Be Dismissed.

Adobe argues Plaintiffs' unjust enrichment and injunctive relief claims should be dismissed because neither is recognized under California law. (Mot. at 25). Adobe is wrong about unjust enrichment. "Both the Ninth Circuit and the California Supreme Court have allowed independent

claims for unjust enrichment to proceed." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051 (N.D. Cal. 2025); *see also Shipley v. Meta Platforms, Inc.*, 2025 WL 3683868, at *13 (N.D. Cal. Dec. 18, 2025) (rejecting the conclusions of *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020), cited by Adobe, and suggesting independent unjust enrichment claim may proceed); *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *7 (N.D. Cal. Mar. 17, 2025). As in *Cherkin*, "[b]ecause [the defendant] does not challenge the substance of the unjust-enrichment claim, and plaintiffs have plausibly alleged severe intrusions on [the plaintiffs'] privacy, the claim may proceed at this stage." 2025 WL 844378, at *7; *see also Meta Pixel*, 724 F. Supp. 3d at 1008 (rejecting motion to dismiss unjust enrichment claim in similar privacy context).

Adobe's injunctive relief argument boils down to semantics. Whether injunctive relief is most accurately described as a remedy linked to another cause of action, and not an independent cause of action, is irrelevant. Plaintiffs have adequately stated their first eight causes of action for the reasons stated above, and Adobe does not argue that injunctive relief is unavailable as a remedy under those claims—so there is no basis to "dismiss" Plaintiffs' request for injunctive relief. *See In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007) ("Although denominated as a separate claim, count nine is not a separate cause of action but a request for injunctive relief. The Court will not foreclose the remedy of injunctive relief at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count nine with the understanding that count nine is not an independent ground for relief.").

## IX. CONCLUSION

For the reasons stated above, the motion to dismiss should be denied.

Dated: January 20, 2026

/s/ William J. Edelman
William J. Edelman (SBN 285177)
Gary M. Klinger (admitted *pro hac vice*)
MILBERG, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
gklinger@milberg.com
wedelman@milberg.com

Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
Yuanchen Lu (admitted *pro hac vice*)
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Daniel R. Schwartz (admitted *pro hac vice)*
Rebecca Trickey (admitted *pro hac vice*)
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
dschwartz@dicellolevitt.com
rtrickey@dicellolevitt.com

David A. Straite (admitted *pro hac vice*)
DICELLO LEVITT LLP
485 Lexington Ave., Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
dstraite@dicellolevitt.com

John J. Nelson (SBN 317598)
MILBERG, PLLC
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
jnelson@milberg.com

*Interim Co-Lead Counsel*

Robert C. Schubert S.B.N. 62684
Willem F. Jonckheer S.B.N. 178748
Amber L. Schubert S.B.N. 278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

Daniel O. Herrera (*pro hac vice* forthcoming)
**CAFFERTY CLOBES MERIWETHER& SPRENGEL LLP**

135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com

*Additional Plaintiffs' Counsel*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, William J. Edelman, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th Day of January, 2026, at Chicago, Illinois.

By *__/s/ William J. Edelman__*
William J. Edelman

**CERTIFICATE OF SERVICE**

I, William J. Edelman, hereby certify that on January 20, 2026, I caused to be electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

*/s/William J. Edelman*
William J. Edelman