ANGEL T. NAKAMURA (SBN 205396)
Angel.Nakamura@arnoldporter.com
KRISTINA ILIOPOULOS (SBN 341548)
Kristina.Iliopoulos@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

ESTAYVAINE BRAGG (SBN 341400)
Estayvaine.Bragg@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

JAMI M. VIBBERT (admitted *pro hac vice*)
Jami.Vibbert@arnoldporter.com
DAVID B. SCHWARTZ (admitted *pro hac vice*)
David.Schwartz@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Facsimile: 212.836.8689

DANIEL E. RAYMOND (admitted *pro hac vice*)
Daniel.Raymond@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison, Street Suite 4200
Chicago, IL 60602-4321
Telephone: 312.583.2300
Facsimile: 312.583.2360

*Attorneys for Defendant Adobe Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

IN RE: ADOBE DATA TRACKING LITIGATION

This Document Related to: All Actions

Case No. 5:25-cv-03032-NW

**DEFENDANT ADOBE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Judge: Hon. Noël Wise
Date: April 15, 2026
Time: 9:00 a.m.
Location: Courtroom 3, 5th Floor

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS FAIL TO ADEQUATELY PLEAD LACK OF CONSENT ........ 2

II. PLAINTIFFS' CIPA CLAIMS FAIL FOR MULTIPLE REASONS. ........ 3

A. Plaintiffs Cannot State a Claim Under CIPA Section 631 ........ 3

B. Plaintiffs Do Not Allege Adobe Used a Device To Intentionally Record Confidential Communications. ........ 7

C. Dismissal of Plaintiffs' Section 638.51 Claim Is Warranted. ........ 9

III. PLAINTIFFS FAIL TO PLEAD A "HIGHLY OFFENSIVE" INTRUSION OR A "REASONABLE EXPECTATION OF PRIVACY" ........ 10

IV. PLAINTIFFS FAIL TO ALLEGE DAMAGES AND ACCESS UNDER CDAFA ........ 12

V. PLAINTIFFS FAIL TO ALLEGE UCL STANDING OR UNLAWFUL CONDUCT ........ 14

VI. UNJUST ENRICHMENT AND INJUNCTIVE RELIEF CANNOT STAND ALONE ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024) ... 14

*Busby v. Invoca, Inc.*,
2025 WL 822664 (N.D. Cal. Mar. 14, 2025) ... 3

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ... 8

*Casillas v. Six Flags Entm't Corp.*,
2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ... 4

*Chrisman v. City of L.A.*,
155 Cal. App. 4th 29 (2007) ... 14

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ... 12

*Diamond Real Est. v. Am. Brokers Conduit*,
2017 WL 412527 (N.D. Cal. Jan. 31, 2017) ... 15

*Doe v. Eating Recovery*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ... 3, 4, 5, 6

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 13

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ... 12, 13

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ... 13

*In re Facebook Tracking*
956 F.3d 589 (9th Cir. 2020) ... 6, 11

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ... 15

*Gaige v. Exer Holding Company LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) ... 12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ... 3

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)........................................................ 8, 15

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ........................................ 7, 11, 15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................... 11

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025)................................................ 11

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)................................................ 12, 13

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)........................................... 14, 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................... 11

*Katx-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ......................................................... 8

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ................................................ 9

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)............................................. 5, 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................... 11

*Mikusky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)........................................................... 5

*Mirmalek v. Los Angeles Times Comms. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .............................................. 10

*Moore v. Centrelake Med. Grp.*,
83 Cal. App. 5th 515 (2022)........................................................................ 14

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025).......................................... 2, 3, 15

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ........................................................ 13

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)................................................... 5

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) ....... 4, 10

*Rodriguez v. Ford Motor Corp.*, 722 F. Supp. 3d 1104 (S.D. Cal. March 15, 2024)....... 7

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....... 14, 15

*Shah v. MyFitnessPal, Inc.*, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....... 5

*Smith v. Rack Room Shoes*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ....... 8

*Stuart v. Cadbury Adams USA, LLC*, 2010 WL 1407303 (C.D. Cal. Apr. 5, 2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011) ....... 5

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ....... 8

*Tanner v. Acushnet Co.*, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023)....... 14

*Torres v. Prudential Fin., Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....... 14

*Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173 (9th Cir. 2021)....... 5

*Yuan v. Facebook, Inc.*, 2021 WL 4503105 (N.D. Cal. Sept. 30, 2021) ....... 4

**Statutes**

Cal. Bus. & Prof. Code § 17204 ....... 14

Cal. Penal Code § 502....... 12, 13

Cal. Penal Code § 631....... *passim*

Cal. Penal Code § 638.50(b) ....... 10

**Constitutional Provisions**

California Constitution....... 10, 12

# INTRODUCTION

Despite Plaintiffs' rhetoric and puffery, their Opposition completely fails to address the Complaint's critical flaws. Unable to conjure allegations that Adobe is doing anything more than providing analytics and advertising services to its enterprise customers (website owners), Mot. at 3, Plaintiffs turn to red herrings about purported "CNAME cloaking" and ID syncing functionalities, but these cannot save them because they admit these functionalities are controlled by Adobe's enterprise customers (not Adobe). *See* Compl. ¶ 51 ("Adobe ***offers*** its CNAME implementation to *all* its clients." (first emphasis added)); *id.* ¶ 46 (cookie syncing purportedly implemented by an Adobe customer on its webpage). Unable to dispute that the Adobe Experience Cloud ID ("ECID")—the purported "touchstone" of Adobe's "entire advertising business" that "subvert[ed] modern privacy protections" by tracking users across the entire internet, *see id.* ¶¶ 2-4, 41—is specifically designed by Adobe to be customer-specific to prevent tracking across the internet, Mot. at 3–4,[1] Plaintiffs pivot to a discussion of the demdex cookie, which the Complaint characterizes (correctly) as nothing more than a component of the ECID. Compl. ¶¶ 37–43.

Most critically, unable to identify an allegation of even a single instance where Adobe sent any Plaintiff a targeted advertisement, sold any website or app user data, disclosed Plaintiffs' identifies, created an identity graph using their data, or caused them any tangible harm, Plaintiffs turn to generalized expert testing untethered to their own experiences. Mot. at 4–5. But the absence of Plaintiff-specific allegations is not a pleading technicality, it is a core deficiency in every single claim. Plaintiffs' causes of action all require specific allegations about actual interactions with webpages, communications with those webpages, actual conduct, and tangible harm. Plaintiffs do not identify when they visited the relevant websites or apps, what (if any) consent they provided or what disclosures they received, what information Adobe supposedly captured during those visits, or how any of these facts amount to a violation of law. Instead, Plaintiffs read into their Complaint allegations that are not there and ask the Court to take their expert's post-hoc testing of various websites as well-pled allegations. Much more is required to plead their claims. Plaintiffs had the

[1] *See also* ECF 83, Ex. 1 to Adobe's Request for Judicial Notice ("RJN"). Plaintiffs have not opposed Adobe's RJN.

opportunity to amend, but instead doubled down on these allegations. Plaintiffs have no good faith way of amending to cure any deficiencies, which warrants dismissal with prejudice.

## ARGUMENT

### I. PLAINTIFFS FAIL TO ADEQUATELY PLEAD LACK OF CONSENT.

Plaintiffs attempt to deflect from their lack of sufficient consent allegations by citing inapplicable summary judgment and motion to dismiss authorities about the burden when defendants argue that plaintiffs consented (something Adobe is not arguing here), Opp. at 3–4, but they cannot and do not dispute that consent remains an element of each of Plaintiffs' statutory claims. *See* Mot. at 6; *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *2 (N.D. Cal. Oct. 27, 2025).[2] To survive a motion to dismiss, "Plaintiffs must do more than merely assert that they did not consent to . . . tracking." *Perez*, 2025 WL 3085786, at *3 (citations omitted). Their Opposition confirms that dismissal is warranted because Plaintiffs rely entirely on conclusory (and identical) assertions of non-consent—"[w]ithout Plaintiff []'s knowledge or consent." Opp. at 3 (quoting Compl. ¶¶ 97, 106, 112, 118, 125). Beyond these rote allegations, Plaintiffs plead no facts about their own experiences. The remaining allegations Plaintiffs invoke are generalized and unrelated to them or their experiences like offering sweeping claims about what an "average" consumer would or would not know about Adobe's technology, not what any Plaintiff knew, saw, or agreed to. Compl. ¶ 54; *see id.* ¶¶ 136–141 (discussing users and consumers generally, not anything specific to Plaintiffs), *id.* ¶ 193 (claiming, without factual support, that Adobe's conduct is offensive). Such generalized allegations cannot plausibly establish a lack of consent.

Plaintiffs' assertion that their threadbare generalized allegations are sufficient to plead that "no Plaintiff could have known of or consented to Adobe tracking them across the internet," Opp. at 3, rests on their false premise that they could only consent ***to Adobe***, when Plaintiffs know and acknowledge that consent would be made to the individual website visited.[3] The same fallacy

[2] Consideration of consent is appropriate on a motion to dismiss where, as here, "consent is an element of at least one claim." *Perez*, 2025 WL 3085786, at *2–3.

[3] Plaintiffs wrongly assert that their cited cases stand for a general principal that a defendant "cannot establish consent" when plaintiffs allege their activity was secret. Opp. at 3–4. But these cases—where plaintiffs made specific allegations about the scope of the consent and why it was

underlies Plaintiffs' argument, without authority, that Adobe must "identify any policy or document that Plaintiffs allegedly consented through." Opp. at 3. Plaintiffs chose to bring a case alleging claims based on visits to many websites—despite the obvious differences in the data on those sites, how those sites use Adobe's products, and how those sites may obtain user consent. Plaintiffs know that many, if not all, of the websites they allegedly visited had cookie banners and privacy policies. Indeed, they and their expert acknowledge and rely on the existence of those in generally arguing that "[s]ome web sites offer users the option of opting out or rejecting tracking cookies," but that it "can [purportedly] fail" for certain Adobe cookies in certain instances. *See* Ex. A to Compl. ¶¶ 43–48 (showing a screenshot of a homepage where an "opt out" cookie banner and link to a privacy policy is visible); *see* Opp. at 2, 4 (arguing the alleged opt out is ineffective). Nevertheless, Plaintiffs fail to address these cookie banners and privacy policies in their Complaint. *See Perez*, 2025 WL 3085786, at *2–3 (dismissing claims because plaintiffs failed to allege "what they knew of the [privacy] policy [on the website], when they knew it, and whether that information had any effect on their decisions related to the site"). They cannot now rely on the breadth of their pleadings to make up for the lack of sufficient depth. Having failed to allege facts supporting lack of consent, Plaintiffs' claims should be dismissed.

## II. PLAINTIFFS' CIPA CLAIMS FAIL FOR MULTIPLE REASONS.

### A. Plaintiffs Cannot State a Claim Under CIPA Section 631.

Plaintiffs admit that their allegations are limited to violations of clauses (2)–(4) of Section 631, Opp. at 5, and that clauses (3) and (4) require a predicate violation of clause (2) to be viable. Opp at 10; *see* Mot. at 7–8. Because Plaintiffs fail to plausibly allege a violation of clause (2), their entire CIPA Section 631 claim fails as a matter of law, particularly when considered in the context of the misalignment of CIPA to this type of conduct entirely.[4]

---

insufficient—confirm that Plaintiffs' conclusory pleading here fails. *See Busby v. Invoca, Inc.*, 2025 WL 822664, at *1 (N.D. Cal. Mar. 14, 2025) (complaint acknowledged disclosures but "[t]hese disclosure did not request or obtain plaintiffs' consent for [defendant] to record the calls"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1039–40 (S.D. Cal. 2023) (complaint's alleged disclosures did not amount to consent).

[4] Plaintiffs urge the Court to ignore the rule of lenity, arguing that CIPA is unambiguous. Opp. at 15. But, as explained in *Doe v. Eating Recovery*, CIPA is a "total mess" and its provisions make

***First***, Plaintiffs concede that CIPA requires that Adobe intercepted the contents of a communication (an intended message) and that they cannot rely only on Adobe's non-actionable interception of non-content, record information. Opp. at 6–7 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). However, their Complaint citations confirm, in fact, that the only information they allege Adobe intercepted is record information that cannot sustain a claim. Compl. ¶¶ 98, 106–07, 113, 119, 126 (repeated allegations that "[n]etwork traffic shows" that when a person visits certain websites, only the ECID, URLs, and Company ID are sent to Adobe). Plaintiffs never allege what they communicated to what website, what message was conveyed, or what substantive content Adobe supposedly intercepted. Instead, each Plaintiff repeats the conclusory assertion that "Adobe's tracking technology caused [his/her] browser to send detailed information regarding the content of [his/her] communications." *Id.* ¶¶ 97, 106, 112, 118, 125. That formulaic allegation—no matter how often repeated—is insufficient to state a claim.[5]

Plaintiffs' attempt to create allegations by relying on an expert (instead of actions they themselves took) should be disregarded. They cannot hide behind an expert as a substitute for allegations that Adobe harmed them, especially because the Complaint itself fails to allege any underlying facts supporting Plaintiffs' claim. Opp. at 5–6[6]; *see Yuan v. Facebook, Inc.*, 2021 WL 4503105, at *3 (N.D. Cal. Sept. 30, 2021) (finding expert's opinions "cannot substitute for facts" in the complaint and declining to consider expert's opinion as set forth in the complaint on a motion

---

little sense when applied to modern technology. 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). The proliferation of CIPA lawsuits challenging all types of web functionality with varying outcomes underscores the statute's inherent ambiguities and supports narrow construction.

[5] Plaintiffs' reliance on authorities where the complaints contained specific allegations about substantive content interception are unavailing. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) (complaint alleged defendant captured "precise articles read, products viewed, and searches queried"); *Casillas v. Six Flags Entm't Corp.*, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) (complaint made detailed allegations defendant intercepted interests and shopping behaviors, in addition to record information).

[6] Plaintiffs reference paragraphs 93–97 of the Complaint for purported allegations that Plaintiff ***Johnston*** visited certain websites, Opp. at 6, but these paragraphs relate to Plaintiff Rapak generally visiting the Marriott website. Compl. ¶¶ 93–97. Plaintiffs likely meant to cite paragraphs 101–106, but these allegations merely say that Plaintiff Johnston visited CVS pharmacy and Walgreens websites and that she uses WebMD. *Id.* ¶¶ 101–06. There are no allegations in any of these paragraphs as to what was allegedly intercepted about Plaintiffs from those visits to those websites.

to dismiss) (collecting cases); *Stuart v. Cadbury Adams USA, LLC*, 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011) (finding that an expert report in the complaint generated for the purposes of the litigation was not a "written instrument" under Rule 10(c) that could be incorporated into the pleading and "[p]laintiff's inclusion of an expert report in the [complaint] d[id] not save her case"). Plaintiffs also should not be allowed to skate by on insufficient allegations to force unnecessary and complicated discovery—Plaintiffs cannot rely on discovery to cure a lack of any allegations at the pleading stage. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery."). Because Plaintiffs do not allege that they personally provided any message or content to any website and rely only on a generalized assertion, their Section 631 claim fails. *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *7 (N.D. Cal. Jan. 27, 2026) (plaintiffs failed to identify specific communications and contents of communications); *Mikusky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (same).

***Second***, Plaintiffs fail to allege that Adobe read or attempted to learn the contents of any communication ***while that communication was in transit***, as Section 631 requires. Mot. at 10–11; *see Eating Recovery Center*, 2025 WL 2971090, at *6 ("[Y]ou have to do something more than just intercept the contents of the communication or redirect them to yourself during the virtually infinitesimal amount of time it takes for the communication to travel from the website visitor to the website.") (citing *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025)). Plaintiffs cannot and do not identify actual allegations that Adobe read or attempted to learn the contents in transit. Instead, Plaintiffs *argue* that they allege "Adobe simultaneously captures data [] and acts on it in real time to create its identifiable user profiles" and that these allegations are sufficient for the in transit reading requirement at the pleading stage. Opp at 7–8. But, fatal to their claim, Plaintiffs did not "explicitly allege" these key temporal allegations in the Complaint. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing Section 631 claim where plaintiffs "d[id] not explicitly allege this 'real time' theory in their complaints"); *R.C. v. Sussex Publishers, LLC,* 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (dismissing claim

where plaintiff alleged information was sent to defendant for processing and only later read the data while it was not in transit). The only Complaint paragraphs Plaintiffs cite in their Opposition do not allege that Adobe read or attempted to learn contents in transit or that Adobe's reading was "simultaneous" with capture—rather they focus on what Adobe does with the information ***after*** it is transmitted without any reference to when such activities purportedly occur. Paragraph 68 alleges that Adobe's data collection tag transmits information to Adobe's servers, not that Adobe read or attempted to learn about the information in transit, and paragraph 69 alleges that information is redirected to Adobe's servers and ***later*** aggregated into profiles. Compl. ¶¶ 68–69. Paragraphs 72 to 75 likewise describe Adobe products and services (like Audience Manager, Campaign, and Predictive Analytics), but say nothing about Adobe reading information in transit or simultaneously acting on collected data. *Id.* ¶¶ 72–75.[7] Because Plaintiffs do not allege Adobe read their communications in transit, their Section 631 claim should be dismissed.[8]

***Third***, if Plaintiffs' dearth of allegations supporting Section 631 were not enough, their Section 631 claim also fails because Adobe falls squarely within the well-established party exception.[9] At its core, the Complaint establishes only that (1) Adobe acts as a service provider to its clients (Compl. ¶ 25), (2) Adobe's technology acts within and operates within its customers' website infrastructure (*id.* ¶¶ 30–35), and (3) Adobe's customers use Adobe's products for those customers own purposes—not that Adobe uses its products for Adobe's purposes (*id.* ¶¶ 67–70; 71–

[7] Plaintiffs' attempt to rely on some Adobe product names that include the word "real-time" (e.g., Real-Time Customer Data Platform), Opp. at 8, are unavailing without actual allegations that these products read or learn contents in transit simultaneous with collecting data. *See Eating Recovery Center*, 2025 WL 2971090, at *6 (action must be "during the virtually infinitesimal amount of time it takes for the communication to travel from the website visitor to the website operator").

[8] Plaintiffs' 631 claim also fails because Plaintiffs do not allege a coherent story about how Adobe read any specific communications while in transit. *See LinkedIn Corp.*, 2025 WL 2899514, at *16 (dismissing Section 631 claim where plaintiffs did not allege a "coherent story" of how the defendant "read the specific communications between [plaintiffs] and the websites they visited" such as by alleging they received targeted advertising "after interacting with the challenged websites").

[9] Plaintiffs wrongly assert that Adobe argues it is a direct party to the communication, Opp. at 8-9 (citing *In re Facebook Tracking*, 956 F.3d 589, 607 (9th Cir. 2020)), but it does not. As explained in the Motion, Adobe falls within the party exception not as a direct party to the communication but as a service provider to its enterprise customers. *See* Mot. at 11–12.

73; 78–80). These allegations make Adobe a tool being used by the website owner, which means, as a mere service provider, Adobe cannot be liable under Section 631. *See Rodriguez v. Ford Motor Corp.*, 722 F. Supp. 3d 1104, 1117–18 (S.D. Cal. March 15, 2024).

Plaintiffs argue (but have no allegations to support) that Adobe uses data from its customers' websites for its "*own* benefit" and that it "independently monetizes and profits from the data" and therefore cannot rely on the party exception. Opp. at 9. Not only do Plaintiffs identify no factual allegations supporting this argument, the Complaint actually supports Adobe's argument that it does not profit off of the data and only earns revenue by selling services to its enterprise customers and enabling those customers to conduct advertising for their own purposes. Compl. ¶¶ 44, 78, 85. Plaintiffs' failure to plead any facts supporting their contention that Adobe acted independently of its customers as a third-party eavesdropper warrants dismissal of their Section 631 claim.

***Finally***, Plaintiffs cannot rely on Adobe's headquarters in California or conclusory allegations that Adobe later used data in California, Opp. at 10, to support the application of CIPA for communications not sent from or received in California. Cal. Penal Code § 631; *see* Mot. at 12–13. Plaintiffs concede that Plaintiff Rapak is not a California resident and that Plaintiffs Chwe and Olita no longer reside in California. Compl. ¶¶ 14, 16–17. They do not plausibly allege that any of these Plaintiffs sent or received communications in California or that Adobe ***intercepted*** their communications there. This deficiency is fatal to the out-of-state Plaintiffs' Section 631 claims. *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) ("Plaintiffs fail to allege that the data in question was ***intercepted*** in California." (emphasis added)).

### B. Plaintiffs Do Not Allege Adobe Used a Device To Intentionally Record Confidential Communications.

Plaintiffs' Section 632 claim fails for two independent reasons: Plaintiffs do not plausibly allege that Adobe (1) used a device to record communications, or (2) intended to record any confidential communications. Mot. at 13–16. Plaintiffs' Opposition fails to cure either defect.

***First***, Plaintiffs do not plausibly allege that Adobe "used" any recording device. Section 632 imposes liability only on a person who "uses" an electronic amplifying or recording device. Cal. Penal Code. § 632(a). Plaintiffs do not dispute this requirement. Instead, Plaintiffs argue that

Adobe created the technology and provided it to its customers. Opp. at 10. But, creating and supplying software that customers choose to deploy on their own websites is not "using" a device to record communications. Plaintiffs nowhere allege that Adobe itself activated, controlled, or operated any recording functionality on the websites at issue. *See supra* Section II.A.

***Second***, Plaintiffs fail to plausibly allege that Adobe recorded any confidential communications or intended to do so. California courts have long recognized that internet communications are generally not confidential absent specific facts establishing an objectively reasonable expectation of privacy. Mot. at 14 (collecting cases); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746–47 (N.D. Cal. 2023) (dismissing Section 632 claim). Plaintiffs ask the Court to disregard this authority, but offer no facts that overcome this presumption.

In fact, Plaintiffs expressly decline to plead any details about any specific communications, their subject matter, their recipients, or why those communications were confidential. Plaintiffs' citations to allegations concerning Plaintiff Olita underscore this failure. *See* Opp. at 12. They point to allegations that merely list websites she supposedly often visited, like Amazon, followed by a conclusory assertion that Adobe intercepted the "content" of unspecified communications with these websites that allegedly revealed generalized personal tastes and preferences. Compl. ¶¶ 117–18. Plaintiffs then cite statements about what their expert believes Adobe ***may*** collect from a hypothetical website visitor (but not any Plaintiff). *Id.* ¶ 119. This same pattern repeats for every Plaintiff. Such allegations provide no facts about the substance of any communication, why it was confidential, or why Adobe allegedly intended to record it. This is fatal to Plaintiffs' Section 632 claim. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848–49 (N.D. Cal. 2014) (dismissing Section 632 claim for failing to allege facts that their communications were confidential).

Even the authority Plaintiffs cite confirms their Section 632 claim should be dismissed.[10] In *Griffith v. TikTok, Inc.*, the court rejected allegations about what TikTok ***could*** collect, such as

---

[10] Plaintiffs' reliance on *Smith v. Rack Room Shoes* is misplaced because there the plaintiffs alleged a specific expectation of privacy based on disclosures and promises in the defendant's privacy policy. 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025). *Katx-Lacabe v. Oracle America, Inc.*, is likewise inapposite as it did not involve a Section 632 claim and turned on allegations of online and offline data collection, including race and politics. 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023).

searches for medical conditions or addiction facilities, as insufficient. 697 F. Supp. 3d 963, 970 n.4 (C.D. Cal. 2023). The Section 632 claim survived only because the plaintiff alleged specific, concrete facts about the videos she searched for and watched and the products she browsed, bought, and sold. *Id.* at 970. Plaintiffs here do not allege any comparable facts.

***Finally***, Plaintiffs ask the Court to forgive the fact that they did not even plead intent in their Section 632 claim because they incorporated hundreds of allegations into that count. Instead, they argue that they plead intent because they generally allege Adobe designed its technology to intercept data while circumventing privacy protections for the purpose of profiling individuals and monetizing their data. Opp. at 13–14. Plaintiffs do not cite to any allegations of their Complaint as support for good reason—because none exist. Rather, the Complaint only alleges that Adobe makes money from providing technology products to its customers. *See supra* Section II.A.iii.

**C. Dismissal of Plaintiffs' Section 638.51 Claim Is Warranted.**

As the Court has held, a pen register or trap and trace device, by definition, captures identifying information ***about***, but not the contents of, a communication. *See* Mot. at 16–17 (citing *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025); Cal. Penal Code § 638.50(c)). Plaintiffs take issue with the plain language of CIPA, and the Court's interpretation of it, and argue the same alleged conduct can be both content interception (to support their Section 631 claim) and non-content capture (to support their Section 638.51 claim). Opp. at 14. But Plaintiffs' "heads I win, tails you lose" reading of the statute is wrong, and the statute does not permit such a result. Plaintiffs could have pled these theories in the alternative, but they chose not to do so. Having alleged that Adobe intercepted "contents" of communications, Plaintiffs cannot simultaneously maintain a claim premised on the absence of content. As the Court recognized, Plaintiffs must choose one theory or the other. *See Kishnani*, 2025 WL 1745726, at *4; *Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025).

To the extent that Plaintiffs argue the "ECID Framework" contains the necessary identifying information for this claim, such reliance fails because Adobe assigns the ECIDs; ECIDs are not generated by the website visitor. Mot. at 17–18. Nothing in this criminal statute suggests that a party is liable for "intercepting" signaling information it created. Nor would such a reading of the

statute make any sense. A device must capture information transmitted by the ***user's*** instrument—not assigned to the user by the alleged interceptor. Cal. Penal Code § 638.50(b), (c). An identifier that Adobe itself generates does not "capture" routing, addressing, or signaling information of the user. Plaintiffs expressly allege that Adobe creates and assigns the ECID. Compl. ¶¶ 3, 19, 41, 42. A process originating with Adobe cannot, by definition, operate as a device for this claim.

Finally, Plaintiffs claim that their Complaint alleges that Adobe collects other routing, addressing, and signaling information beyond the ECID and cite one case that says IP addresses can constitute address or signaling information. Opp. at 15 (citing *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024)).[11] This argument fails for two reasons. First, Plaintiffs' Fifth Cause of Action does not allege interception of IP addresses or other signaling information. The words "IP address" do not appear in that claim, which Plaintiffs instead limit expressly to Adobe's "ECID Framework" that allegedly captured "user and device identifiers" and "the Adobe Org ID"—both of which are assigned by Adobe. Compl. ¶¶ 332–43. Second, in any event, Plaintiffs do not allege that they themselves transmitted any such information or that Adobe captured it from their communications. The allegations Plaintiffs cite state only that "network traffic" generally would show Adobe intercepting ECIDs, URLs, or company identifiers. *Id.* ¶¶ 98, 107, 113, 119, 126. Not a single Plaintiff alleges that Adobe intercepted their IP address. Plaintiffs' Section 638.51 claim should be dismissed.

## III. PLAINTIFFS FAIL TO PLEAD A "HIGHLY OFFENSIVE" INTRUSION OR A "REASONABLE EXPECTATION OF PRIVACY."

As Plaintiffs acknowledge, they must show that (1) they had a reasonable expectation of privacy and (2) the invasion was "highly offensive" for their common law invasion of privacy and California Constitution claims. Opp. at 16. Plaintiffs have not sufficiently pled either element, and thus, their claims should be dismissed.

This District routinely dismisses invasion of privacy claims where the alleged "highly

[11] Plaintiffs misstate *Riganian*. Opp. at 15. The court did not opine on whether device identification numbers constitute addressing or signaling information; rather, the court there merely said that devices can be broader than devices installed in telephones. 791 F. Supp. 3d at 1092.

offensive" conduct involved a defendant's collection of browsing habits and activity, as Plaintiffs allege here. *See* Mot. at 19 (collecting cases). Plaintiffs try to distinguish these cases by pointing out that the collection of browsing activity here is "cross-website," Opp. at 17–19, but this is a distinction without a difference. In those cases, "highly offensive" is judged by the sensitivity of the data, not whether the data was collected across websites. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

Here, Plaintiffs have not sufficiently alleged that Adobe collected any of their "specific or personal" information. While some Plaintiffs continue to vaguely allege that they "access[ed] and obtain[ed] information related to [] medical care," (Compl. ¶ 107; *see also id.* ¶¶ 106, 125), none of the Plaintiffs "specifically allege that [their] searches related to the provision of healthcare, patient status, or otherwise included PHI." *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *6 (E.D. Cal. June 9, 2025). Thus, their contention that the *Hammerling v. Google LLC* decision supports their position is nonsensical. In *Hammerling*, plaintiffs alleged that Google collected information from ***non-Google apps***, including fertility apps, that allowed "Google to infer about a user's pregnancy, sleep cycle, religion, political affiliation, and menstrual cycle." 615 F. Supp. 3d at 1089. The court acknowledged that while "information about a user's menstrual cycle is extremely intimate," plaintiffs failed to allege that Google actually collected "specific menstrual cycle information inputted in the fertility tracker app." *Id.* at 1091. That is precisely the situation here—Plaintiffs only generally allege that they accessed medical-related websites, but they do not specifically allege that Adobe collected and disclosed ***any*** of their medical information, and thus, just like the plaintiffs in *Hammerling*, Plaintiffs have not shown any "highly offensive" invasion.

Plaintiffs again turn to *Facebook Tracking* and claim that the Ninth Circuit "found allegations similar to those here sufficient to proceed past the pleadings." Opp. at 19. Not so. In that case, the Ninth Circuit explained that plaintiffs sufficiently pled that Facebook's conduct violated social norms where Facebook "affirmatively stated that logged-out user data would *not* be collected . . . but then collected it anyway." 956 F.3d at 602 (emphasis added). Plaintiffs do not allege that Adobe explicitly did something it said it would not do, and so *Facebook Tracking* is

inapposite. Likewise, in *Gaige v. Exer Holding Company LLC*, another case cited by Plaintiffs, the court found that plaintiff had sufficiently alleged "highly offensive" conduct where he alleged that his searches for medical treatments and diagnoses were disclosed to third parties, "which led to him receiving advertisements related to his medical conditions and/or treatments." 2025 WL 559719, at *8 (C.D. Cal. Jan. 30, 2025). Plaintiffs here have not included any such allegations regarding targeted advertisements or of disclosures of medical information. *See supra* Section II.A.

For these same reasons, Plaintiffs have not sufficiently pled they had a "reasonable expectation of privacy" because Plaintiffs have not shown that the data allegedly collected and disclosed by Adobe was sensitive or that they have a reasonable expectation of privacy in routine browsing activity. *See D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (Plaintiffs must "plead [] facts to suggest that [the] data was sensitive").

Because Plaintiffs have failed to allege both elements of an invasion of privacy claim, their common law invasion of privacy and California Constitution claims should be dismissed.

## IV. PLAINTIFFS FAIL TO ALLEGE DAMAGES AND ACCESS UNDER CDAFA.

Plaintiffs do not have standing to bring a claim under the CDAFA because they have not sufficiently alleged that they "suffer[ed] damage or loss by reason of a violation" of the statute. Cal. Penal Code § 502. "[T]he majority of courts to consider the issue" have held that "the CDAFA's private right of action contemplates ***some damage to the computer system, network, program, or data contained on that computer***, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) (emphasis added). In response to Adobe's Motion, Plaintiffs assert they have standing because Adobe unjustly profited from their data and because Adobe's technology has taken up device and computing resources. Opp. at 20–21. But courts, including in this District, have rejected both of these theories of damages under the CDAFA.

First, Plaintiffs' unjust-profit theory fails because it does not allege any damage to a "computer system, network, program, or data contained on that computer."[12] *Heiting*, 709 F. Supp.

[12] Plaintiffs fail to distinguish *Doe* and other Adobe-cited cases. Opp. at 20–21. For example, contrary to Plaintiffs' assertion, there is no discussion in *Doe* comparing medical information and

3d at 1021; *see Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025). Although Plaintiffs note that some courts have, at the pleading stage, accepted unjust enrichment theories, Opp. at 20, several decisions reject that approach because the statute limits compensatory damages to expenditures incurred to verify whether data or a computer "was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1); *see Heiting*, 709 F. Supp. 3d at 1021. Plaintiffs allege no facts supporting any alteration, damage, or deletion and thus lack standing.

Second, Plaintiffs now attempt to establish standing by claiming that their computer storage and "computing resources" were impacted. Opp. at 21. But Plaintiffs allege no facts in the Complaint to show how their computer storage or computing resources were somehow impacted. In their Opposition, Plaintiffs refer to a section of their Complaint that vaguely alleges how Adobe's technology could impact bandwidth, but none of the Plaintiffs specifically allege that the technology impacted the bandwidth or storage on their computers. *See* Compl. ¶¶ 158–64. Without such allegations, Plaintiffs' storage theory fails. *See Doe*, 789 F. Supp. 3d at 845 (dismissing CDAFA claim because "Plaintiffs have failed to plead any measurable decrease in storage, memory, or any other impairment to their computing devices' functioning"); *Doe I v. Google LL*C, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (dismissing CDAFA claim because "plaintiffs' alleged damage [of] reduced storage, disk space, and performance of their computers . . . " did not establish standing).

Regardless, even if Plaintiffs had standing, they still have not alleged that Adobe accessed their computer system or computer data "without permission." Cal. Penal Code § 502(c)(1)–(2), (7).[13] Courts in this district routinely hold that, under CDAFA, access is only without permission if the defendant "circumvents technical or code based barriers in place to restrict or bar a user's access." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (collecting cases); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) (CDAFA liability for acting

---

browsing histories in evaluating CDAFA standing or hypothesizing that an individual is more likely to monetize certain types of personal data. 789 F. Supp. 3d at 845.

[13] For this reason, Plaintiffs' supposed "other valid basis," Opp. at 22–23, are of no significance because the statute requires that all activities were performed "without permission" for the other sections of the CDAFA that Plaintiffs allege that Adobe violated. *See* Cal. Penal Code § 502(c)(3), (6), (8), (13); (b)(12) (without permission is included in the definition of computer contaminant).

without permission "if [defendants] access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers" (cleaned up)). Plaintiffs identify no code-based or technical barriers that Adobe had to circumvent specific to Plaintiffs' use of any website. And Plaintiffs have not alleged, nor could they, that Adobe hacked into their computers or that Plaintiffs are unable to use their computers as a result of Adobe's activities. *Chrisman v. City of L.A.*, 155 Cal. App. 4th 29, 34 (2007). Without such allegations, Plaintiffs cannot demonstrate that their computer system or data was accessed without authorization.

## V. PLAINTIFFS FAIL TO ALLEGE UCL STANDING OR UNLAWFUL CONDUCT

Plaintiffs lack standing to bring a claim under the UCL because they do not sufficiently allege that they have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. First, "the weight of authority holds that a plaintiff's personal information does not constitute property." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (quoting *Low*, 900 F. Supp. 2d at 1030). In response, Plaintiffs muster only that "courts are divided on whether diminution in value of personal information is a cognizable UCL injury" and baldly assert that cases supporting their position are "better-reasoned." Opp. at 24. But the weight of authority, based on the fact that personal data is not "capable of exclusive possession or control," shows that Plaintiffs' personal data does not constitute property and thus they do not have standing under the UCL. *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *10 (C.D. Cal. Nov. 20, 2023); *see Shah*, 768 F. Supp. 3d at 1048. Their claim should be dismissed for this independent reason.

Second, and critically, Plaintiffs ignore that, even if the Court took their view that personal information can constitute property, they have wholly failed to provide "sufficient facts from which the Court may reasonably infer that [Defendant's] misappropriation reduced the value of Plaintiffs' information." *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024). Plaintiffs argued that they "alleg[ed] that Adobe sells the data"—but they make no such allegation. Opp. at 24. In fact, Plaintiffs do not provide ***any*** facts for how any alleged disclosure reduced the value of their information. *See Moore v. Centrelake Med. Grp.*, 83 Cal. App. 5th 515, 538 (2022); *see also Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1284 (C.D. Cal. 2024) (dismissing UCL claim where "[t]here is no indication from Plaintiffs' Complaint that they could or would have sold

the[ir] personal information"); *Griffith*, 697 F. Supp. 3d at 970 n.4 (dismissing UCL claim because plaintiff "does not allege specific facts showing that she could have sold the limited data").

Plaintiffs miss the point when they claim that they have alleged lost money or property through their "invasion of privacy and unjust enrichment bases for UCL standing." Opp. at 23. Even assuming they alleged Adobe was unjustly enriched "through its sharing or use of the plaintiffs' information," "that's different from saying the plaintiffs lost money." *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (dismissing UCL claim for lack of standing). And any invasion of privacy basis for UCL standing is premised on a finding of both the existence and diminishment of a property right, which numerous courts have rejected. *See, e.g.*, *Hubbard*, 2025 WL 82211, at *13 (rejecting a right to exclude basis for UCL standing because "[a] violation of a right to privacy does not constitute diminishment of a property interest").

Finally, even if Plaintiffs had standing, their UCL claim still fails because they do not sufficiently allege that Adobe engaged in any "unlawful" or "unfair" conduct. Plaintiffs' statutory and common law claims all fail, *see supra* Sections II.A–B, and thus Plaintiffs have failed to allege ***any*** unlawful conduct. The unfair prong cannot be satisfied when overlapping privacy claims for the same conduct are dismissed. *Hammerling*, 2022 WL 17365255, at *12–13.

## VI. UNJUST ENRICHMENT AND INJUNCTIVE RELIEF CANNOT STAND ALONE.

Contrary to Plaintiffs' assertions (Opp. at 24–25), unjust enrichment and injunctive relief are not standalone causes of action under California law. State and federal courts—including this Court—"have consistently dismissed" such claims on that basis. *Perez*, 2025 WL 3085786, at *4 (dismissing unjust enrichment claim); *see Diamond Real Est. v. Am. Brokers Conduit*, 2017 WL 412527, at *9 (N.D. Cal. Jan. 31, 2017) ("[I]njunctive relief is merely a remedy . . . [t]hus, where a plaintiff alleges a cause of action for injunction, courts routinely dismiss it."). This is not merely "semantics," as Plaintiffs suggest, Opp. at 25, it is California law.[14]

## CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety, with prejudice.

---

[14] Even under Plaintiffs' inapplicable authority, their unjust enrichment claim should be dismissed because they fail to allege their "remedies at law are inadequate." *Shah*, 768 F. Supp. 3d at 1051.

Dated: February 9, 2026

Respectfully submitted,

*/s/ David B. Schwartz*

Angel Tang Nakamura (SBN 205396)
Angel.Nakamura@arnoldporter.com
Kristina Iliopoulos (SBN 341548)
Kristina.Iliopoulos@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone: 213.243.4000
Facsimile: 213.243.4199

Jami Vibbert (admitted *pro hac vice*)
Jami.Vibbert@arnoldporter.com
David B. Schwartz (admitted *pro hac vice*)
David.Schwartz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Facsimile: 212.836.8689

Daniel E. Raymond (admitted *pro hac vice*)
Daniel.Raymond@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison, Street Suite 4200
Chicago, IL 60602-4321
Telephone: 312.583.2300
Facsimile: 312.583.2360

Estayvaine Bragg (SBN 341400)
Estayvaine.Bragg@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

*Attorneys for Defendant Adobe Inc.*